SUPREME CONSTRUCTION COMPANY, INC., Plaintiff, v. OLYMPIC RECREATION, INC., Defendant and Respondent: CHRISTIFULLI and another, Copartners, Defendants and Appellants.*

*March 5—April 7, 1959.*

* Motion for rehearing denied, with $25 costs, on June 2, 1959.

For the appellants there were briefs and oral argument by *Carl H. Juergens* of Milwaukee.

For the respondent there was a brief and oral argument by *Gerald J. Rice* of Milwaukee.

FAIRCHILD, J. Appellants Christifulli make no express claim that the findings of the court are not sustained by the evidence. Their specific challenges are that the trial court abused its discretion in refusing to allow appellants to amend

their complaint to allege a cause of action for the unjust enrichment of Olympic and they further claim that the trial court should have allowed a new trial.

We have, however, reviewed the evidence in order to comprehend and deal with the issues which appellants have directly raised. We come to the conclusion that the court's findings were supported by the evidence and that there was no abuse of discretion in denying appellants' motion for amendment of their complaint and for a new trial.

(1) *Sufficiency of the evidence to support the findings.* One of the main issues was whether the parties had expressly or impliedly agreed that all work done by Christifulli and not called for in the original plans should be done only upon authorization of Olympic and should be Olympic's direct obligation to Christifulli. It did appear that the original plans were not adequate for the desired building and that the building as constructed differed from the building called for by the plans in some substantial ways. More electrical outlets and some electrical installations different from those called for by the original plans were installed. The contract between Supreme and Olympic included what was referred to as "partially proposed drawings," and contemplated that the contractor would complete the "partially prepared plans." The contract also contained the provision "if at any time during the progress of the work, the owner shall require any additions, alleviations, deviations, or omissions from said contract the owner shall have the right to make the changes desired and the said changes shall in no way affect or make void this contract but the difference in cost shall be borne by the owner." There was nothing in this contract or in the document considered to be the contract between Supreme and Christifulli which contained any express provision as to procedure in the matter of changes and extras. Mr. Darby, one of the Christifulli partners, testified generally that as to all ex-

tras Supreme referred him to Olympic and officers of Olympic authorized all extras. On the other hand Mr. Raasch, an officer of Olympic, testified that many of the changes were agreed upon between Supreme and Olympic and were not discussed with Darby. The Christifulli time slips and invoices for materials were produced in court but they showed only that certain time had been spent and materials bought for the bowling-alley job and did not segregate extras from contract items. It was conceded that Christifulli kept no separate record of charges under the contract and for extras. There were no office records showing that hours of labor or items of material were billed against Olympic during the time that Supreme was acting as contractor. No statement was ever rendered to Olympic by Christifulli before February 4, 1957, billing Olympic for extras. There was also a statement in evidence rendered by Supreme to Olympic on January 9, 1957, claiming amounts due for extras performed by subcontractors, including Christifulli. Raasch testified that Darby was present with Raasch and representatives of Supreme at a conference at which this statement was discussed and Darby discussed the items on it for electrical work. Thus there was ample evidence tending to show that all parties acted as if the owner was obligated to Supreme for extras and Supreme in turn was obligated to the subcontractor for them.

Another important issue was whether in early February Christifulli and Olympic had made an agreement under which Christifulli agreed to finish the work in return for a payment of $3,000 by Olympic or whether the $3,000 was simply a payment on account. When the abandonment of the work by Supreme became imminent in late January, Christifulli supplied all parties with copies of a letter in which Christifulli asserted that they were 90 per cent finished with the original contract and 90 per cent finished with the extras and that their time to complete the original contract and

extras was estimated at ten working days or one week for two men. Raasch testified that Darby agreed to complete the contract for the sum of $3,000 and testified that a notation on a lien waiver given by Christifulli on February 7, 1957, at the time the $3,000 was paid was evidence of this agreement. The printed form of waiver was signed not only by Christifulli but by the officers of Olympic and contained the written notation, "for the full amount of $3,000 only." The sum of $3,000 was paid to Christifulli by Mutual Savings & Loan Association pursuant to an agreement between the Association and Olympic in which it was agreed that the balance of funds then on hand to the credit of Olympic would be paid by the Association to various subcontractors upon certain conditions. The conditions specified for the payment of $3,000 to Christifulli were "upon oral to complete all work without delay." While the billings rendered later by Christifulli treated the $3,000 payment as a credit on the total bill for all the work, including that which had been done for Supreme, the evidence referred to was sufficient to sustain a finding that it was paid for the completion of the work.

Another matter about which there was considerable conflict was the amount of Christifulli's total claim for extras. There was sufficient confusion in Darby's testimony and in the records of Christifulli prepared under Darby's instructions to warrant the court in disregarding much of Darby's testimony. On October 30, 1956, Christifulli had made an application to Supreme for payment in the amount of $3,331.38. No allocation was made between work under contract and extras. Supreme made the payment. On November 26th, there was another application for payment in the total amount of $4,643.25, again with no allocation and again paid by Supreme. On December 28, 1956, there was another application for payment in the total amount of $4,359.06, without any allocation, and this amount was paid by Mutual Savings & Loan Association on January 24, 1957,

after the statement by Christifulli that they were 90 per cent finished with the original contract and the extras. On February 4, 1957, Christifulli submitted an application for payment listing the balance of the contract at $1,666.37, listing labor and materials on extras as $5,870.18, and a total due of $7,536.55. The same amount of extras was listed on a statement dated February 22d, although in that statement the $3,000 payment was claimed as a payment on the total account. As late as September 26, 1957, Christifulli, over Darby's signature, rendered a statement to Olympic claiming the contract price of $14,000, extras in the amount of $8,561.08, giving credit for payment of $16,333.69, and leaving a balance due Christifulli of $6,227.39. This was some time after very different figures indicating a much larger claim had been used in the cross complaint filed in this action.

Part of the total bill was computed by a formula of $15 for each electrical outlet. Christifulli introduced a statement claiming a sum of money for approximately 550 extra outlets, but when Darby attempted to testify as to the additional outlets placed in all parts of the building, the court found he only testified to 256. Darby estimated the number of all outlets in the building in excess of 1,000, but the total number of all outlets shown by the city permits was 548. Darby admitted that he could not "pin-point" which extras were finished after the abandonment of the work by Supreme. It also appeared that Olympic later paid another contractor approximately $950 to complete work not completed by Christifulli and to correct work done by Christifulli and rejected by the city inspector. There was testimony by an expert witness called by Christifulli that a total of $31,000 would be a reasonable charge for the whole amount of electrical work which he had seen in the building, but it was not clear how much of the electrical work which he examined

had been installed by Christifulli.* The expert also testified that in practice, billing for extras would normally be made as work was being done and not withheld until completion.

Faced with the various disputes and inconsistencies of testimony and records, the trial court evidently decided that the only sound bases for a finding as to the amount of extras properly authorized and performed after the abandonment of the job by Supreme were certain written orders signed by the officers of Olympic. Some of these contained specific prices. Where they did not indicate a price, Mr. Darby testified as to the reasonable value of the work performed. These sums were then totaled by the court at $3,526.01 and a $1,000 payment made to Christifulli by Mr. Raasch in March was offset against the total. It appears that one of the allowed items was signed November 16, 1956, which was prior to the abandonment by Supreme, and another was dated January 21, 1957, which was prior to the agreement to complete the work for $3,000 as found by the court. The allowance of these items may have been inconsistent with the court's conclusion that Olympic's only obligation was for work done after Supreme left the job and beyond what Christifulli agreed to perform for $3,000. If this is an error it was in appellants' favor and respondent has not asked any review. We conclude that the trial court could properly reject, under the circumstances we have described, the vague and confused testimony that other extras had been authorized by Olympic at various times, and confine the amounts allowed to those which were represented by signed orders. The burden of proof, of course, was upon Christifulli.

(2) *Appellants' motion for amendment of their cross complaint.* After the trial had been completed Christifulli moved for permission to amend their cross complaint. The

---

* This sentence withdrawn. See memorandum on motion for rehearing, post, p. 85a. REPORTER.

proposed allegations were in substance that Olympic has been unjustly enriched by the work and materials furnished by Christifulli. Appellants fail to point out, however, any issue which might be raised by such amendment which had not actually been fully tried.

In order to sustain a cause of action for unjust enrichment, Christifulli would have to show, among other things, acceptance and retention by Olympic of benefit conferred by Christifulli under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof. *Kelley Lumber Co. v. Woelfel* (1957), 1 Wis. (2d) 390, 392, 83 N. W. (2d) 872. There would be nothing inequitable about Olympic's refusal to pay Christifulli if the parties all contemplated that Olympic's obligation was to pay Supreme, and that Christifulli were working for Supreme. This was placed in issue by the original pleadings and the issue was resolved by findings supported by the evidence. A pleading upon the theory of unjust enrichment would not have added any materially different issue. There is no claim that Olympic's settlement with the trustee in bankruptcy for Supreme was improper in any respect nor that there was any collusion to prevent Christifulli from establishing their full claim against Supreme. There was no abuse of discretion in refusing permission to amend.

(3) *Claimed reasons for a new trial.* The request for a new trial is based upon several grounds. The first was that Olympic was allowed to call three witnesses during the time that Christifulli were presenting their affirmative case. We have examined the record and can see no possible prejudice arising out of this fact. It occurred in an attempt to accommodate the particular witnesses. Appellants' other reasons are that Christifulli allegedly were not given an opportunity to rebut the evidence introduced by Olympic; that their attorney was not given an opportunity to present any argument concerning the evidence and the law; that he did not

have an opportunity before the trial to investigate the voluminous records and that since the trial Christifulli's accountant had prepared a statement showing the amount due Christifulli from Olympic. With reference to these asserted reasons the record shows that present counsel was the third attorney for Christifulli and was substituted about three weeks before the trial. It appears from comments of the court that while the litigation was pending the court had proposed to appoint a former circuit judge as referee, but that the only party who did not appear before the referee was Christifulli. The trial consumed approximately four days and the transcript of testimony contains 399 pages and there are 47 exhibits. It is clear from the record that proper pretrial proceedings would have saved a very considerable amount of time of trial. Christifulli, in moving for a new trial, did not specify any type of evidence which they might have produced to rebut the evidence offered by Olympic and the statement of the accountant could be of no weight since it was admitted on the trial that books and records showing the important facts did not exist. While the record does not show a formal offer by the court to hear rebuttal testimony, nor any statement indicating a waiver, the matter did close with redirect examination of Mr. Darby by appellants' counsel. The last four pages of transcript indicate a discussion of the issues between the court and counsel including a notation that there was a discussion off the record. At the time of the hearing on the motion for a new trial (before the court signed any findings) the transcript contained 21 pages and most of it consisted of a discussion between the court and counsel of the various elements of fact and law involved. Upon the basis of our review of the record, it is our conclusion that the case was as thoroughly tried as the character of the evidence available to Christifulli would permit; that careful consideration appears to have been given by the court to all the important elements in dispute; that Christi-

fulli had not succeeded in pointing out any evidence or principles of law that were overlooked and that under all these circumstances, the fact that the record does not disclose a designation of a specific time for offering evidence in rebuttal or for argument does not show that appellants' rights were prejudiced. We conclude therefore that the court did not abuse its discretion in denying the motion for the new trial.

Christifulli claim that the court erred in deciding that Christifulli had not established a lien. This question becomes immaterial because the amount of the judgment has already been deposited in court and no additional amount will be awarded as a result of this appeal.

The order denying the amendment and the motion for a new trial was not appealable, although it has been reviewed upon the appeal from the judgment.

*By the Court.*—Judgment affirmed; appeal from the order dismissed.

The following memorandum was filed June 2, 1959:

PER CURIAM (*on motion for rehearing*). Appellants take exception to portions of the following statement: "There was testimony by an expert witness called by Christifulli that a total of $31,000 would be a reasonable charge for the whole amount of electrical work which he had seen in the building, but it was not clear how much of the electrical work which he examined had been installed by Christifulli."

After reviewing the expert's testimony we conclude that the quoted statement is incorrect and it is withdrawn.

The expert testified in substance that a total of $31,000 would be a reasonable charge for the electrical work and fixtures furnished, $17,000 of which was for extras shown on a list supplied to him by Darby. While he testified that he counted the installations shown on the list, he twice

avoided specifying the number he counted in answer to questions put by the trial judge. The list was apparently the same list in which Darby claimed a number of outlets far in excess of the number shown by other evidence to have been installed. The court quite properly declined to give full weight to the expert's testimony.

The motion for rehearing is denied with $25 costs.