FULLERTON LUMBER COMPANY, Appellant, v. KORTH and another, Respondents.

*January 2—January 30, 1968.*

532

534

For the appellant there was a brief and oral argument by *Eugene A. Bitters* of Ripon.

For the respondents there was a brief by *Worthing, Schneider & Mickiewicz* of Fond du Lac, and oral argument by *Kenneth E. Worthing.*

ROBERT W. HANSEN, J.  Two questions are raised by this appeal.  As set forth by the trial court judge in his decision, they are:

(1) Was the son-in-law, Adolph Weinkauf, properly an agent of Herman Korth for the purpose of being served with the notice of lien, pursuant to sec. 289.02 (1), Stats.?

(2) Was the Fullerton Lumber Company entitled to amend its complaint to conform to the proof at the close of its case and to have judgment on the basis of unjust enrichment?

The trial court judge answered both questions in the negative, and we find that he did so correctly.

As to the relationship existing between Herman and his son-in-law, Adolph, the trial court found it to be that of landlord and tenant, stating that "The business arrangements between the Korths and Weinkaufs were handled as any other landlord-tenant relationship in and around the area."

This is the second time that this case and these parties are before this court. *Fullerton Lumber Co. v. Korth* (1964), 23 Wis. 2d 253, 127 N. W. 2d 1. That decision made clear that if the relationship between Herman and his son-in-law, Adolph, was solely that of landlord and tenant, no lien can be asserted against landlord Herman's property.

However, if the lumber company could show that the relationship between Herman and his son-in-law was

that of principal and agent, this court in the earlier case stated, ". . . it may be possible, depending upon the proof adduced, to draw an inference that the agent entered into the contract within the scope of his authority." It was to permit further exploration of this possibility that this court, in the 1964 review, reversed the trial court and ordered a new trial holding that the lumber company had been improperly foreclosed from developing an agency relationship by the trial court's application of the dead man's statute (sec. 325.16) to bar testimony by the executrix-widow on the issue of agency.

At the retrial, the executrix-widow testified that she and her husband gave their daughter and son-in-law permission to make the improvements, primarily adding a porch to the farmhouse, but with the express understanding that the daughter and son-in-law were to bear the entire expense thereof. This testimony was substantiated by other witnesses and it is undisputed that Herman told Adolph ". . . if you build it, you pay for it. I have nothing to do with it."

The statutory lien as provided for in sec. 289.01 (4), Stats., requires:

"EXPRESS AGREEMENT OF OWNER. This section does not give a lien upon the interest of any owner in land unless there is an express agreement between him and the contractor whereby such owner agrees to pay for or become responsible for the payment of the improvement."

The plaintiff-appellant's contention that the agreement contemplated by the statute was entered into by son-in-law, Adolph, on behalf of his principal, father-in-law, Herman, acting within the scope of authority delegated to him by Herman fails entirely on the clear proof that Herman at all times stated he would not pay for the porch and would permit its construction only if Adolph would pay for it. Clearly, there was neither advance authorization nor subsequent ratification to establish an

"express agreement" between Herman and the lumber company to pay for materials furnished.

Plaintiff-appellant complains that the trial court failed to rule on the impact of the statute of frauds, particularly sec. 240.08, Stats., on the oral lease between Herman and his son-in-law, Adolph, "although they were cited to the court and heavily relied upon by the plaintiff." The oversight is understandable. Sec. 240.08 relates to the matter of enforceability of terms of an oral lease as between landlord and tenant. It does not change the fact of landlord-tenant relationship. If it did, it would be as reasonable to argue that it made them strangers-in-law to each other as that it made them partners-in-law. The tenancy does take a different form, but the landlord-tenant do not become partners by estoppel to strangers to the oral lease or rental agreement.

The second question asked by this appeal is: Was the plaintiff-appellant entitled to judgment on the basis of unjust enrichment? The trial court answered: No, finding that it ". . . cannot find it equitable to make the estate of Herman Korth pay for a benefit that he, himself, so strongly through life wanted to have no part of in any way, shape, form or manner." It would be difficult to sustain a contrary finding.

It is true that the undergirding theory for recovery on the basis of unjust enrichment does not depend upon the existence of a valid contract or binding promise to pay for benefits received. In defining and developing this quasi-contractual basis for reimbursement, this court has conceded:

"A quasi contract is not a genuine contract and no promise of repayment need be shown. A quasi contract means that there is no contract in fact but the parties will be treated under the circumstances as if there had been a contract. . . . Recovery is based upon the universally recognized moral principle that one who has received a benefit has the duty to make restitution when to retain such benefit would be unjust." *Arjay v. Kohlmetz* (1960), 9 Wis. 2d 535, 539, 101 N. W. 2d 700.

That case gives the rationale for requiring the return of property or its value on equitable principles rather than promises, agreements or intentions. One year later, this court spelled out the ground rules for application of the quasi-contractual concept of unjust enrichment:

"The essential elements of a quasi contract entitling one to judgment for unjust enrichment are: (1) A benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) the acceptance or retention by the defendant of such benefit under circumstances such as it would be inequitable to retain the benefit without payment of the value thereof." *General Accident Fire & Life Assur. Corp. v. Bergquist* (1961), 15 Wis. 2d 166, 175, 111 N. W. 2d 900.

In the case before the court, the tenant who ordered and agreed to pay the contractor for adding a porch to the farmhouse did pay the contractor. It is clear that if the lumber company subcontractor were proceeding against son-in-law, Adolph, in quasi contract, recovery would be denied. In a recent case where a subcontractor, unable to collect from the contractor, proceeded against the owner of the property in quasi contract, this court ruled:

". . . we find no equity in favor of the plaintiff when the relationship of the plaintiff to the defendant is that of subcontractor to owner and when the evidence indicates that the owner has either paid the general contractor for the benefits furnished or is obligated to do so. *Superior Plumbing Co. v. Tefs,* supra, 27 Wis. 2d at 438. *See also Supreme Construction Co. v. Olympic Recreation* (1959), 7 Wis. 2d 74, 83, 95 N. W. 2d 826, 96 N. W. 2d 809.

"We conclude that it would be inequitable to find the owner Brimmel liable on an implied contract to Gebhardt when, as here, there was an express contract between the contractor Semrow and the subcontractor Gebhardt. This case is directly governed by our decision in *Superior Plumbing Co. v. Tefs* (1965), 27 Wis. 2d 434, 135 N. W. 2d 430. We therein held that a subcontractor must resort

for payment to the principal contractor and not to the owner of the property and that the owner is not liable on an implied contract simply because he has received goods or services or knows that the services have been rendered. In that case we quoted with approval from *Utschig v. McClone* (1962), 16 Wis. 2d 506, 509, 114 N. W. 2d 854, stating:

" 'By the subcontractors' lien statute, sec. 289.02, Stats., and following, the law has offered security and protection to a subcontractor. His failure to avail himself of the remedy so provided does not produce for him a right to recover payment directly from an owner who did not employ him and with whom he had no contract.' " *Gebhardt Bros., Inc., v. Brimmel* (1966), 31 Wis. 2d 581, 585, 143 N. W. 2d 479.

We feel that it is an application more than an extension of the reasoning of this decision to conclude that it would be inequitable to require the estate of a farm owner to pay a subcontractor in a situation where the farm tenant has already paid for materials furnished, making the payment to the contractor. If the plaintiff-appellant has not rights against the estate of Herman Korth under the lien statute, it can find no relief in the equitable approach of quasi contract.

In this case, it is the principal contractor who has been unjustly enriched. He was paid for what he did by the tenant farmer. He did not pay the subcontractor who furnished the materials. However, it was the subcontractor lumber yard that contracted with and extended credit to the contractor. From the standpoint of the equities involved, it is true that the estate of Herman Korth has a new porch on an old house. However, it is the exact porch that Herman did not want and expressly stated he would not pay for. It is an improvement but one which did not increase the rental income, at least not for as long as it remains on a fifty-fifty, crop-sharing arrangement. It did not appear to the trial court and it does not appear to us that the quasi-contractual approach should be applied to produce for the subcontractor a

right to recover in equity from the owner who did not employ it for a benefit he did not want and for which he expressly stated he would not pay.

In oral argument, plaintiff-appellant contended that no harm would be done to the estate of Herman Korth if it were required to pay the lumber company for materials furnished. It would not be out-of-pocket because it could turn around and sue the son-in-law who had agreed to add the porch without cost to Herman. This would mean that son-in-law, Adolph, would pay twice for the building materials needed for the porch, to the contractor and to the lumber company. Under certain circumstances, this might be a result made unavoidable by statutory lien provisions. Under no circumstances, does it recommend itself as a result to be based on the application of equitable considerations.

*By the Court.*—Judgment affirmed.