Carol DURHAM, Plaintiff-Respondent-Cross-Appellant-
Petitioner,

v.

Anna A. PEKRUL and Boleslaus W. Pekrul, d/b/a Ann's
Doll Hospital, Defendants-Appellants-Cross-Respon-
dents and Respondents.

Supreme Court

*No. 80–697. Argued October 6, 1981.—*
*Decided November 3, 1981.*

(Also reported in 311 N.W.2d 615.)

For the petitioner there were briefs and oral argument by *John W. Strasburg* of Milwaukee.

For the defendants-appellants there was a brief by *Bernard T. McCartan* and *McMorrow, McBride & Jacquart, S.C.,* of Milwaukee, and oral argument by *Mr. McCartan.*

HEFFERNAN, J.   This is a review of the decision of the court of appeals[1] which affirmed in part and reversed in part a judgment of the Circuit Court for Milwaukee County, GARY A. GERLACH, Circuit Judge.

The action was one for replevin of two antique dolls and for damages for their wrongful detention brought by Carol Durham against Anna A. Pekrul and Boleslaus W. Pekrul, d/b/a Ann's Doll Hospital. Trial was to a jury, which awarded the plaintiff $750 as the value of two dolls which were delivered to the doll hospital for repairs but never returned, $750 for the loss of the use of the dolls from the time of their delivery to the doll hospital

[1] Unpublished opinion, January 13, 1981.

in the fall of 1975 to the time of trial on January 17, 1980, and $4,500 for punitive damages. On motions after verdict, the trial court reduced the jury award for loss of use to zero and reduced the punitive damages to $2,500. Appeal was taken by the defendants from the whole of the judgment, and the plaintiff cross-appealed from the portion of the judgment which eliminated the damages for loss of use and reduced the punitive damages from $4,500 to $2,500. The court of appeals sustained the trial court's order and judgment which eliminated damages for loss of use. It found the evidence sufficient to support the jury award of $750 for the value of the dolls. However, it eliminated the entire award for punitive damages, holding inferentially that, as it viewed the evidence, the defendant's conduct could only be characterized as negligent and could not be characterized as malicious or the willful disregard of the plaintiff's rights. On the plaintiff's petition we ordered the review of the court of appeals decision.

On this review only damages for the loss of use of the dolls and punitive damages are at issue. Defendants, on the appeal, contended that the evidence was insufficient to support a jury verdict to show that the dolls had ever been delivered to the doll hospital, *i.e.*, that the defendants had never unlawfully taken or detained the property and that, therefore, the plaintiff was entitled to nothing in respect to the value of the dolls. This position has been abandoned on appeal, and the question of whether or not there is a cause of action for replevin and for the value of the dolls is not posed on this review. In any event it is apparent that these elements of the verdict and judgment are supported by the evidence.

Because the issues were properly perceived by the court of appeals to be evidentiary, we recount as best we can from the garbled and incomplete record the sequence of the relationship between Carol Durham, the plaintiff-

owner of the dolls, and Anna Pekrul, who was one of the proprietors of the doll hospital. Because the jury believed the testimony of the plaintiff in arriving at its verdict, we recite only the facts of record which support the verdict.

The testimony of Carol Durham revealed that she was the owner of two antique dolls of German make which had been given to her by her maternal and paternal grandmothers. She testified that these dolls were in mint condition except that the smaller doll's eyes needed repair so they would open and close. The larger doll needed minor repairs and its hair needed washing and brushing. She testified that, late in 1975—in the autumn she believed—she took the two dolls to Anna Pekrul's doll hospital for repairs. She testified that Anna Pekrul gave her a claim check which stated on its face that the doll hospital was not responsible for articles left beyond thirty days. She testified, however, that Pekrul told her that, because of the Christmas season, they would not be ready until after Christmas, early in 1976—a period of more than thirty days. She said that, early in 1976, she telephoned the doll hospital and was told by Anna Pekrul that the dolls were not ready. Putting the most favorable construction upon her testimony, as the jury apparently did, she also testified that several months later she again telephoned and was again told by Pekrul that the dolls were not ready. She also testified, somewhat inconsistently, that in January or February of 1976 she had lost the claim check but nevertheless went to the defendants' place of business and was told that without the claim check she could not get the dolls.

Although plaintiff acknowledged the loss of the claim check, she testified that, at the time she delivered the dolls to the hospital, she made a notation in the presence of Anna Pekrul of the maker's identification number which appeared on the back of each of the dolls. This

notation was made on the stub of a used claim check, which Anna Pekrul made available as business cards. Durham also testified that she later made several phone calls, but was told that without the claim check she could not get the dolls.

She stated that she sought legal counsel in January of 1978, and was advised by her attorney to again call the doll hospital. In January or February of 1978, she said, she again called the doll hospital and was told by Anna Pekrul that she was busy, apparently with Valentine's Day doll business, but that Durham should come in and together Durham and Pekrul would look around for the dolls.

She testified that sometime after Valentine's Day of 1978, she personally called at the doll hospital and was told that she could not have the dolls and that all unclaimed repaired dolls had been sold. For this reason, according to the testimony of the plaintiff, Pekrul refused to look for the dolls. During the course of this conversation between the parties at the doll hospital, the defendant, according to the plaintiff, said she had sent a letter to the plaintiff notifying her that the dolls were ready. The plaintiff, however, denied receiving any such notification.

As a consequence of her failure to get the dolls back, Durham commenced the action for replevin of the two dolls or, in the alternative, for their value and additional damages for their wrongful detention.

The defendants denied all the allegations of the plaintiff's complaint. The case was tried to a jury. The plaintiff testified as recounted above. The defendant Anna Pekrul in substance denied any recollection of ever having seen the plaintiff or her dolls. The defendant testified that her first recollection of seeing the plaintiff personally was in 1978 after all unclaimed dolls had been

sold following a notice of sale which had been published in the *Milwaukee Journal*.

Like the testimony of the plaintiff, the defendant's testimony was garbled and inconsistent. It is difficult to glean from the testimony of the defendant whether she relied upon the assertion that she had never received the dolls or whether she was to be exonerated because the claim check was lost, whether the non-return of the dolls had not been timely brought to her attention, or whether her conduct was defensible because she had published a notice that any dolls left in her shop for over thirty days would be sold. She was unable to testify whether or not the dolls sold were those claimed by the plaintiff.

It is apparent the jury, making a choice between the two versions of the incident, both of which were inconsistent and confused, elected to believe Carol Durham in her assertion that the dolls had been delivered for repair and that for a period of more than two years she was put off and given the run-around by Pekrul, who inconsistently, according to Durham, denied that the dolls were ever in her possession, refused to surrender the dolls without a claim check even if they were in her possession, or the further alternatively claimed absolution from responsibility because the dolls were sold after the published notice.

The jury's verdict in respect to the value of the dolls was supported by the trial judge on motions after verdict and by the court of appeals. Both courts determined that there had been sufficient evidence to show that the dolls had been unlawfully withheld, and there was sufficient testimony by an expert witness, the proprietor of another doll repair shop, that the reasonable value of the dolls was $750, the amount found by the jury. On this review these findings are not contested.

The issue of damages for the loss of the use of the dolls during the period of their illegal detention and the amount, if any, of punitive damages to be awarded are posed on this review.

Turning first to the question of the loss of use of the dolls, the plaintiff argues, as she did before the court of appeals, that the trial court erred in granting the defendants' motion to change the amount of damages for loss of use from $750 to zero.

We have reviewed the record and determined that it is wholly devoid of any evidence whatsoever to sustain a loss of use award. The plaintiff testified that, even when she was a little girl, the dolls were not to be played with but merely were to be displayed and admired. No evidence revealed that doll collecting was her hobby, that she had ever shown them in doll shows, or that she had ever sought to compete for prizes with them. There was no evidence of any pecuniary loss occasioned by the fact these dolls were out of her possession for a period of over three years. It is clear, of course, that she was deprived of the use of her dolls and the pleasure she might have had by their possession; but under the record we have before us, the damages at best which might have been recoverable under proper proof would only be nominal. Even if we were to assume that such nominal damages ought to have been awarded, they would be insubstantial. The failure to award them even under circumstances more favorable to the plaintiff than appear in this record would be so trivial that their omission would be *de minimis*. Basically, however, we agree with the court of appeals in its determination that the record establishes that the plaintiff did not introduce any evidence at trial upon which the jury could base an award of damages for loss of use. We affirm the court of appeals' determination that the trial court correctly reduced the jury award of damages for loss of use to zero.

Additionally, and undoubtedly more importantly for the purposes of this review, the plaintiff objects to the trial court's reduction of punitive damages from $4,500 to $2,500 and objects to the court of appeals' reduction of the punitive damages awarded by the judgment to zero. The court of appeals correctly pointed out that punitive damages do not arise from negligence alone. We conclude, however, from a review of the record, the jury could properly have found that the conduct of the defendant in this case transcended that which may be properly denominated as mere negligence.

It should be pointed out that it is conceded that the plaintiff requested an instruction on punitive damages. The record does not show that the defendant objected to that instruction. At oral argument before this court, counsel for the defendants, although he was not the counsel at trial, indicated his belief that there had been no objection to the instruction on punitive damages. Accordingly, under Wisconsin law, objection to the instructions as such cannot be made for the first time in a post-trial motion or on appeal. The failure to make a timely objection is a waiver of any objection to the particular instruction given and is tantamount to a concession that the record posed facts which made the instruction appropriate.

The only question, then, on review is whether the record revealed any facts which, if believed by the jury, would warrant the imposition of punitive damages.

The appropriateness of the provisions of the punitive damages instruction cannot be questioned. It was conceded by the parties that the punitive damages instruction given was that which appears in Wisconsin Jury Instructions—Civil 1707. In passing, we point out that neither the instructions nor the record of any conference in respect to them was included in the record; and accordingly we are obliged to assume that the parties are

correct in their assertion that the pattern instruction (Civil 1707) on punitive damages was the one that was submitted to the jury. In substance, the instruction permits, but does not require, the jury to award punitive damages if it finds from the evidence "that the defendant acted either maliciously or in a wanton, willful or reckless disregard of the plaintiff's rights."

In the attack upon the award of any punitive damages, the defendants argue that such damages are to be allowed only in cases involving aggravation, insult, malice, cruelty, or vindictiveness; or where no malice is shown the acts must have the outrageousness associated with serious crime. Nevertheless, the defendants, both in the court of appeals brief and the brief before this court, acknowledge that under the holding of *Kink v. Combs,* 28 Wis. 2d 65, 135 N.W.2d 789 (1965), punitive damages may also be allowed where there has been a wanton, willful, or reckless disregard of a person's rights. This test, however, defendants assert, requires a showing that the tortfeasor's conduct, to be wanton, willful, or reckless, must be tantamount to gross negligence and must demonstrate either actual or constructive intent to injure. We have no difficulty, however, in determining from the record that the jury, acting reasonably, could have concluded that Anna Pekrul's conduct was wanton, willful, and reckless. It is not necessary for this court to conclude that, had it been the jury, it would have so held. Rather, the question is whether a reasonable jury, acting reasonably, could have so found. The record is replete with evidence that was sufficient to give rise to the inference that was clearly accepted by the jury. The jury could have concluded that Pekrul stood on the position set forth in her claim checks that all dolls which were left for more than thirty days were considered to be abandoned and subject to sale. Yet, inconsistently, at the very initial encounter between the parties, the owner

of the dolls was told they would not be ready within thirty days and that she should call later. The jury could reasonably conclude that the defendant at least twice told the dolls' owner that the dolls were not yet repaired. Yet at almost the same time, in another instance, the owner was told that without the check she could not secure the return of the dolls. And finally it was asserted that she did not have the dolls, never did have them, and if she did have them they had been sold as abandoned property. It is obvious that at the very least the evidence could be reasonably understood to demonstrate that Carol Durham was given the run-around by Anna Pekrul.

We hasten to state that most of the testimony of Carol Durham was contradicted by Anna Pekrul. However, it was the dolls' owner that the jury believed, and accordingly it is the duty of an appellate court to construe the evidence most favorably to the jury verdict, which reflects the credence given to Durham's testimony. As so construed, it is clear that the conduct of the owner of the doll hospital could be found to be wanton, willful, and reckless and in disregard of Durham's rights.

We have no quarrel with the defendants' assertion that wanton, willful, and reckless conduct may encompass the concepts of either actual or constructive intent to injure or harm, but that concept is irrelevant in this case; and accordingly we do not decide whether actual or constructive intent are the necessary ingredients of wanton, willful, or reckless conduct. Had the defendants wished to have the jury conform to that definition, an appropriate jury instruction could have been requested. The record does not show that such a request was made. As stated above, the conduct of Anna Pekrul, whether intentional or not, was so erratic, inconsistent, and misleading—or at least a reasonable jury could so infer—that it consti-

tuted the reckless disregard of the plaintiff's right to the possession of her dolls. Accordingly, under the instructions, to which the record shows no objection, the jury could properly find, and did find, that the plaintiff was entitled to punitive damages.

There was, of course, testimony of Anna Pekrul upon which the defendants' counsel now relies which could lead a reasonable jury to conclude that no punitive damages should be awarded; but the jury, as the determiners of the credibility of the witnesses, chose not to rely on that testimony and instead accepted the testimony of Carol Durham as a verity. A reasonable jury could therefore conclude that the conduct of the defendant was more than the lack of ordinary care under the circumstances. On the basis of this record, we are obliged to disagree with the conclusions reached by the court of appeals and reverse that part of its decision which totally set aside the award for punitive damages.

Moreover, the trial judge, by giving the punitive damages instruction, implicitly concluded that there were facts in the record which, if believed, could support a jury award. In addition, on motions after verdict, the trial judge, who was familiar with the demeanor of the parties and the intricacies of the conduct of the trial, upheld the jury's finding of punitive damages. Where the record supports the jury's award of punitive damages and the trial court has approved punitive damages, an appellate court should not set aside the award in toto.

Our examination of the record leads us to conclude that the trial judge properly exercised his discretion when he reduced the punitive damages by $2,000. The record demonstrates wanton, willful, or reckless conduct; but it appears to us, as it did to the trial judge, that the jury award was excessive. Accordingly, we reverse that portion of the court of appeals decision that set aside the

judgment of $2,500 found to be appropriate by the trial court. We affirm the portion of the court of appeals decision which reversed the portion of the trial court judgment which awarded damages for $750 for loss of use. The cause is remanded to the trial court for the entry of a judgment awarding to the plaintiff $750 for the value of the property wrongfully taken and $2,500 as punitive damages.

*By the Court.*—Decision affirmed in part; reversed in part; and cause remanded to the trial court for entry of judgment consistent with this opinion.

STEINMETZ, J., took no part.