Jasen, J.
This appeal brings up for review the scope of applicability of section 80-b of the Civil Rights Law.[1]
The parties to this appeal were married in 1953 and divorced on May 20, 1960. In July of 1960, they resumed living together with the expectation that they would ultimately remarry. They continued to live together, without remarrying, until the spring of 1962, when plaintiff and the couple’s daughter moved away from the premises. Prior thereto, on July 15, 1961, defendant entered into a contract to purchase premises known as 100 Ocean Avenue in Islip. In conjunction with this transaction, it was necessary for the defendant to obtain a mortgage commitment in the sum of $25,000 from defendant Bay Shore Federal Savings & Loan Association. At the time of closing, August 30, 1961, title to the property was vested, at the request of the defendant, in the names of ‘ ‘ Elmer Gaden, Jr., and Dorothy J. Gaden, his wife.” The bond and mortgage given to the bank for the loan extended was executed by both parties and the difference in cash ($13,000) required to close the deal, was furnished by the defendant. Subsequently, in December, 1961, title to a vacant lot contiguous to the purchased premises was similarly acquired in both names for a purchase price of $5,000 — $300 of which was advanced by defendant, and the balance was obtained by a loan from his father. In June of 1962, after plaintiff had moved out of the premises, both parties signed a promissory note for the $5,200 loan used for the purchase of this second parcel of land.
In December, 1967, plaintiff, as tenant in common, commenced this action for partition of both parcels. Defendant counter *84 claimed for the imposition of a constructive- trust and for rescission, based on a claim that the creation of the tenancy in common was a gift conditioned upon remarriage of the parties.
After a trial of the action, Special Term found that section 80-b of the Civil Rights Law was applicable and directed plaintiff to deliver to the defendant a deed of her interest in the parcels provided she would be released from liability on the bond and note which were used to purchase the parcels. The Appellate Division, in reversing the judgment on the law, granted partition as demanded in the complaint, dismissed the counterclaim, affirmed the findings of fact[2] below and remitted the action to Special Term for entry of an appropriate judgment. In reaching this determination, the Appellate Division held that section 80-b of the Civil Rights Law is not applicable to the facts of this case.
Since the Appellate Division specifically affirmed the finding made at Special Term that the defendant transferred an interest in the two parcels to the plaintiff, conditioned upon the remarriage of the parties, we are bound by that determination. Consequently, the crucial question in this case is the applicability of section 80-b of the Civil Rights Law.
In 1935, New York adopted what has become known as a heart balm statute[3], which abolished all causes of action "to recover sums of money as damage for * * * breach of contract to marry” (Civ. Prac. Act, § 61-b) and provided that “No contract to marry * * * shall operate to give rise * * * to any cause or right of action for the breach thereof.” (Civ. Prac. Act, § 61-d.) The purpose and intent of the heart balm statute was clearly set forth in section 61-a of the Civil Practice Act. ‘ ‘ The remedies heretofore provided by law for the enforcement of actions based upon alleged alienation of affections, criminal conversation, seduction and breach of contract to marry, *85 having been subjected to grave abuses, causing extreme annoyance, embarrassment, humiliation and pecuniary damage to many persons wholly innocent and free of any wrongdoing, who were merely the victims of circumstances, and such remedies having been exercised by unscrupulous persons for their unjust enrichment, and such remedies having furnished vehicles for the commission or attempted commission of crime and in many cases having resulted in the perpetration of frauds, it is hereby declared as the public policy of the state that the best interests of the people of the state will be served by the abolition of such remedies. Consequently, in the public interest, the necessity for the enactment of this article is hereby declared as a matter of legislative determination.”
Following enactment of this legislation, it was decided that the statute proscribed not only actions to recover damages for breach of promise to marry, but also prohibited suits to recover specific real or personal property given in contemplation of a marriage. (Andie v. Kaplan, 263 App. Div. 884, affd. 288 N. Y. 685; Josephson v. Dry Dock Sav. Inst., 266 App. Div. 992, affd. 292 N. Y. 666.)
Although the New York State Law Revision Commission proposed an amendment[4] to the statute in 1947 to permit the recovery of antenuptial gifts, this proposed amendment, after enactment by both houses of the Legislature, was vetoed by Governor Dewey.
Finally, in 1965, the afore-mentioned section 80-b of the Civil Rights Law was enacted to legislatively change our interpretation of the heart balm statute. Thus, it should now be abundantly clear that a person, not under any impediment to marry (Lowe v. Quinn, 27 N Y 2d 397), will no longer be denied the right to recover property given in contemplation of a marriage which has not occurred. There can be no doubt that the land was purchased, and an interest was given to plaintiff, in anticipation of the forthcoming remarriage of the parties. Moreover, real property is specifically mentioned in the statute as a class of - gift that is recoverable.
The Appellate Division, however, reasoned that section 80-b is inapplicable where a party undertakes a legal obligation with *86 respect to the gift, such as the plaintiff did in executing a bond and note, since it cannot then be said the sole consideration supplied by the party was the promise to remarry.[5]
Although the obligation incurred by the plaintiff in signing the bond and note constituted legal consideration, the Appellate Division’s interpretation of the word “consideration” failed to give effect to the intention of the Legislature—to authorize actions seeking recovery of gifts given in contemplation of marriage. This conclusion is mandated by reading the second half of the statute in conjunction with the first. That portion of the statute allows the court, in its discretion, to award the donee a lien upon the real property for moneys expended in conjunction therewith or improvements made thereto. Thus, the statute specifically contemplates that the donee may contribute to some extent towards the gift in question.[6] Making this contribution, however, does not defeat the donor’s right to the return of the gift under the statute, but rather only provides the donee with a lien to the extent of the contribution.
Consequently, to construe the words " sole consideration ’ ’ in the first portion of the statute as meaning sole legal consideration would be to ignore the latter half of the statute and to render it meaningless. One of the most elementary canons of statutory construction requires that all parts of a statute are to be read and construed together to determine the legislative intent. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 97.) Thus, it is necessary to interpret the word “ consideration ”, as used in this statute, to mean motive or reason. (See Webster’s Third Lot. Dictionary, p. 484.) Thus interpreted, the statute would read that ‘ ‘ the sole [motivation or reason] for the transfer of the * * * real property was a contemplated marriage which has not occurred ”.
If the statute is so read, it seems abundantly clear that it is applicable to the case at bar. There are affirmed findings of fact that defendant’s gift to the plaintiff of an interest in the parcels *87 of land was conditioned upon the marriage of the parties. It stretches credulity to argue that the reason for including her name on the deeds was to enable the defendant to obtain necessary financing to close the transactions. The truth of the matter is to the contrary, since the necessary financing (mortgage commitment) was obtained solely by the defendant prior to the plaintiff’s name being inserted on the instruments. It was only after the defendant insisted that plaintiff’s name also appear on the deed, as his wife, that her signature on the bond and mortgage was required by the mortgagee. It is also evident that her signature on the bond was of no real benefit to defendant since he had supplied the entire down-payment, as well as subsequent principal and interest payments, and would thus bear the entire loss in event of a default.
The other reason advanced by the Appellate Division for the inapplicability of section 80-b was that “ the statute contemplates a case where one party has directly transferred property to another ”, rather than, as here, where “the transfer was made by a third party to both of the parties.” This reasoning is unduly restrictive of legislative intent. There is nothing in the statute itself that requires a transfer directly from the donor to his fiancee, nor does it seem that such a requirement should be imposed. Many gifts, given in contemplation of marriage, are transferred directly from a third party to a donee without the donor’s ever gaining possession of them. Consequently, the interpretation given by the Appellate Division appears to restrict the application of the statute so as to defeat its intent to provide for return of such gifts where the contemplated marriage did not take place. By limiting the statute to only those situations where one party directly transfers property to another, the Appellate Division has given greater effect to form, rather than substance.
' One further question remains as to whether a remand is necessary to determine the question of fault for the termination of the engagement. The statute itself is silent relative to fault as a factor in determining whether or not a gift in contemplation of marriage is recoverable. This, however, is not wholly determinative of the issue since the statute does not, by its terms, specifically grant a cause of action to recover such gifts, but *88 only states that nothing shall bar such an action. Thus, it may be argued that section 80-b merely removed the impediment to such actions which had developed as a result of our previous interpretation of the heart balm statute and restored the common-law right of recovery in which fault was considered relevant to the controversy. (See Wilson v. Riggs, 267 N. Y. 570, affg. 243 App. Div. 33; Beck v. Cohen, 237 App. Div. 729; Beer v. Hart, 153 Misc. 277.)
This view, however, would seem to be contrary to the entire legislative scheme in this area. The purpose of the initial heart balm legislation was to rid the courts of these actions where the “ wounded ” party appears in court to unfold his or her sorrows before a sympathetic jury. To require a determination of fault in order to entitle one to recover engagement gifts would simply condone this same type of action in yet another form. The result would be to encourage every disappointed donee to resist the return of engagement gifts by blaming the donor for the breakup of the contemplated marriage, thereby promoting dramatic courtroom accusations and counter-accusations of fault.
In truth, in most broken engagements there is no real fault as such—one or both of the parties merely changes his mind about the desirability of the other as a marriage partner. Since the major purpose of the engagement period is to allow a couple time to test the permanency of their feelings, it would seem highly ironic to penalize the donor for taking steps to prevent a possibly unhappy marriage. Indeed, in one sense the engagement period has been successful if the engagement is broken since one of the parties has wisely utilized this time so as to avoid a marriage that in all probability would fail.
Just as the question of fault or guilt has become largely irrelevant to modern divorce proceedings (Gleason v. Gleason, 26 N Y 2d 28, 35), so should it also be deemed irrelevant to the breaking of the engagement. The clear purpose of section 80-b is to return the parties to the position they were in prior to their becoming engaged, without rewarding or punishing either party for the fact that the marriage failed to materialize. The crucial fact is that the engagement is dead and that the statute evidences a policy to allow the return of all gifts given in contemplation of the marriage. Consequently, we should not impose a fault *89 requirement, not present in the statute[7], which would only burden our courts with countless tales of broken hearts and frustrated dreams.
The order below should be reversed and the judgment of the trial court reinstated.

. “ Nothing in this article contained shall be construed to bar a right of action for the recovery of a chattel, the return of money or securities, or the value thereof at the time of such transfer, or the rescission of a deed to real property when the sole consideration for the transfer of the chattel, money or securities or real property was a contemplated marriage which has not occurred, and the court may, if in its discretion justice so requires, (1) award the defendant a lien upon the chattel, securities or real property for monies expended in connection therewith or improvements made thereto, (2) deny judgment for the recovery of the chattel or securities or for rescission of the deed and award money damages in lieu thereof.”

. The Appellate Division, thus, specifically affirmed the factual findings made at Special Term, that the defendant “ made a gift of the estates in common in the two parcels to plaintiff conditioned upon the re-marriage of the parties * * ®, that the parcels were paid for with cash supplied by the defendant, * * * and by notes upon which both plaintiff and defendant obligated themselves ”, but which only “the defendant has kept current both as to principal and interest.”

. Article 2-A of the Civil Practice Act, now Civil Rights Law, §§ 80-a-84.

. 1947 Report of N. Y. Law Rev. Comm., p. 227; N. Y. Legis. Doe., 1947, No. 65(J); Sen. Int. No. 116, Pr. No. 116, Assem. Int. No. 120, Pr. No. 120.

. The trial court had reacted to this factor by conditioning the return of the land upon the release of plaintiff’s legal liabilities.

. Probably the most typical situation contemplated is where the donee pays for part of the gift — i.e., $100 towards a $1,000 ring. The statute, thus, indicates that she will have a lien to the extent of her contribution.

. California, whose experience in this area was somewhat similar to New York’s, enacted a statute to allow recovery of gifts in contemplation of marriage, and also imposed a fault requirement directly in the statute. (Calif. Civil Code, § 1590.) This tends to support the conclusion that if such a requirement is intended, it should be accomplished by legislative mandate.