Dennis G. BROWN, Plaintiff-Appellant,

v.

Terry L. THOMAS, Defendant-Respondent. †

---

† Petition to review denied.

Court of Appeals

*No. 85-0472. Submitted on briefs September 4, 1985.—Decided November 11, 1985.*
(Also reported in 379 N.W.2d 868.)

320

For the plaintiff-appellant the cause was submitted on the briefs of *Hanson & Gasiorkiewicz, S.C.,* with *John A. Becker* of counsel, of Racine.

For the defendant-respondent the cause was submitted on the briefs of *Schober & Radtke, S.C.,* with *Steven J. Lownik* of counsel, of New Berlin.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J. Dennis Brown appeals from a judgment dismissing his claim for the return of an engagement ring given to Terry Thomas. Brown argues that the trial court erred as a matter of law in ruling that recovery of the ring was barred by the statutory abolition of actions for breach of contract to marry. *See* ch. 768, Stats. Brown also contests the trial court's exclusion of certain evidence on the basis of the hearsay rule, remoteness and irrelevancy.

Because ch. 768 is contrary to the common law and must be strictly construed to accomplish its legislative purpose, and because the legislature intended to abolish only suits alleging emotional harm caused by the breach of contract to marry, the trial court erred in concluding that Brown had no cause of action for recovery of the engagement ring. Because the excluded evidence is not relevant to the proper theory of recovery, *i.e.,* conditional gift and unjust enrichment, we affirm the trial court's evidentiary ruling. The judgment is reversed and the cause remanded for further proceedings.

The essential facts are concise and clear. In September, 1983, Brown and Thomas became engaged to be married and Brown gave Thomas an engagement ring. Al-

though a specific date for the wedding was not set, it is uncontroverted that both parties considered the ring to be an engagement ring. In December, 1983, the engagement was terminated. Brown subsequently sued Thomas for return of the ring. At trial both parties alleged that the other broke off the engagement, but a jury finding on this factual issue was precluded by the trial court's decision to grant Thomas's motion for a directed verdict dismissing the complaint on the merits.

The trial court stated that the clear legislative mandate of ch. 768, Stats., was to prohibit all actions arising from a breach of contract to marry except where property was obtained by fraud. *See* secs. 768.01, 768.02 and 768.06.[1] Because Brown neither alleged nor proved that Thomas fraudulently induced him to give her the engagement ring, the trial court concluded that Brown had no remedy under Wisconsin law. We disagree.

---

[1] 768.01 . . . All causes of action for breach of contract to marry, alienation of affections and criminal conversation are hereby abolished, except that this section shall not apply to contracts now existing or to causes of action which heretofore accrued.

768.02 . . . No act hereafter done within this state shall operate to give rise, either within or without this state, to any of the causes of action abolished by this chapter. No contract to marry, which shall hereafter be made in this state, shall operate to give rise, either within or without this state, to any cause of action for breach thereof, and any such acts and contracts are hereby rendered ineffective to support or give rise to any such causes of action, within or without this state.

. . . .

768.06 . . . Actions for the recovery of property received by one party from the other after the alleged contract to marry and before the breach thereof, which was procured by such party by his or her fraud in representing to the other that he or she intended to marry the other and not to breach the contract to marry, are not barred by this chapter; but such actions must be commenced within the time provided by s. 893.41 or be barred. The cause must be shown by affirmative proof aside from the testimony of the party seeking the recovery.

Interpretation of a statute is a question of law which we review without deference to the trial court. *Town of Seymour v. City of Eau Claire,* 112 Wis. 2d 313, 319, 332 N.W.2d 821, 823 (Ct. App. 1983). In interpreting statutes, we are guided by the principles that the aim of statutory construction is to discern the intent of the legislature, and that we will favor a construction that fulfills the purpose of the statute over a construction that defeats the manifest object of the act. *Moonlight v. Boyce,* 125 Wis. 2d 298, 303, 372 N.W.2d 479, 483 (Ct. App. 1985).

It is well settled that statutes in derogation of the common law must be strictly construed. *LePoidevin v. Wilson,* 111 Wis. 2d 116, 129, 330 N.W.2d 555, 562 (1983). This maxim of construction provides that if a statute would change the common law doctrine relevant to the issue presented by the parties, the legislative intent must be clearly expressed. *Id.* at 129–30, 330 N.W.2d at 562. The ultimate goal is to construe the statute as far as possible in harmony with the common law. *Bob Ryan Leasing v. Sampair,* 125 Wis. 2d 266, 268, 371 N.W.2d 405, 406 (Ct.App. 1985).

Prior to 1959, the common law action for breach of promise to marry was recognized in Wisconsin as an action on contract, with damages determined as if the action sounded in tort. *Dauphin v. Landrigan,* 187 Wis. 633, 635, 205 N.W. 557, 558 (1925). As explained by the supreme court in *Klitzke v. Davis,* 172 Wis. 425, 429–30, 179 N.W. 586, 588 (1920), the "usual elements of damages in actions of this character" included compensation for disappointment in the "reasonable expectations of pecuniary advantage from marriage with defendant," injury to feelings, mortification and mental suffering. *See also Wallin v. Sutherland,* 252 Wis. 149, 154–55, 31 N.W.2d 178, 180 (1948) ($12,000 jury award upheld because the "benefits and advantages" to plaintiff of the cancelled marriage in-

323

cluded a permanent home and the right to share defendant's property, earnings, and situation in life).

In the mid-1930's, several state legislatures began to question the continued viability of actions for breach of promise and other actions alleging interference with domestic relations, such as alienation of affections and criminal conversation, because all of these actions

> have afforded a fertile field for blackmail and extortion by means of manufactured suits in which the threat of publicity is used to force a settlement. There is good reason to believe that even genuine actions of this type are brought more frequently than not with purely mercenary or vindictive motives [and] that it is impossible to compensate for such damage with what has derisively been called "heart balm" . . . .

*Prosser and Keeton on the Law of Torts* § 124 at 929 (5th ed. 1984).

In 1959, our legislature abolished breach of promise suits by enacting ch. 248 (now ch. 768), Stats. A Legislative Counsel note declared: "The action for breach of promise encourages marriages that should not take place and its abolishment is in keeping with the philosophy that legislation should be designed to promote stability in marriage. As a remedy which permits monetary recory [sic] the action sanctions conduct that borders on extortion." *V General Report, Wisconsin Legislative Council,* Bill No. 151A, at 67 (1959). Pursuant to the enactment of this chapter "no award of damages for breach of contract to marry can be made or sustained." *Slawek v. Stroh,* 62 Wis. 2d 295, 310, 215 N.W.2d 9, 18 (1974).

A question remained, however, as to the intended scope of this statutory abolition of common law rights. In *Lambert v. State,* 73 Wis. 2d 590, 600–01, 243 N.W.2d 524, 529 (1976), the supreme court concluded: "In abolishing the action for breach of contract to marry, it is apparent that the legislature intended to abolish only the common-

law suit for damages based on the emotional harm caused by the breach."

The trial court's analysis of the legislative intent behind ch. 768, Stats., is contrary to that of the *Lambert* court. The trial court construed ch. 768 to abolish all common law suits related to breach of contract to marry, except for actions based on fraud, sec. 768.06, and stated: "One would assume that if the legislature had intended to accept [sic] conditional gifts or engagement gifts from the purview of Chapter 768 it would have so indicated." We are not persuaded.

The language of sec. 768.06, Stats., does not imply the exclusive remedy suggested by the trial court. It simply provides that "[a]ctions for the recovery of property . . . procured by . . . fraud . . . are not barred by this chapter . . . ." To transform this negatively-phrased statute into an exclusive remedy is to violate a cardinal rule of statutory construction: rules of the common law are not to be changed by doubtful implication. *State v. Klein,* 25 Wis. 2d 394, 401, 130 N.W.2d 816, 820 (1964), *cert. denied,* 380 U.S. 951 (1965). *See* Comment, *Abolition of Breach of Promise in Wisconsin—Scope and Constitutionality,* 43 Marq. L. Rev. 341, 353 (1959) ("It is doubtful construction to imply a legislative purpose to allow an unjust enrichment, merely because fraud cannot be proven.")

Additionally, the sweeping construction applied by the trial court would not further the stated legislative purpose of ch. 768 to prevent extortionary conduct. Thomas asserts that if a donor is allowed to seek recovery "it may encourage the donee to proceed with the marriage, when it would not otherwise be advisable, simply to retain the ring." We decline to endorse this pessimistic and mercenary assessment of contemporary courtship conduct, particularly since there is no basis for it in the statute's legislative history or even the facts of record in this case.

325

Finally, we consider the feasibility of an alternative statutory construction that would effectuate the legislative purpose while retaining a fundamental right guaranteed by our state constitution. Article 1, sec. 9, of the Wisconsin Constitution provides in part: "Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character . . . ." The "certain remedy" Brown seeks here is the recovery of an engagement ring, not damages for emotional harm. Although it appears that his suit is one of first impression in Wisconsin, there is sufficient precedent in our case law, as well as the decided weight of authority in other jurisdictions, to recognize the inherent validity of his claim.

Most jurisdictions recognize the rule that an engagement gift made in contemplation of marriage is conditional upon a subsequent ceremonial marriage. *Piccininni v. Hajus,* 429 A.2d 886, 888 (Conn. 1980); *see* Annot., 46 A.L.R.3d 578, § 3 at 584. To invoke the picturesque metaphor of Justice Musmanno in *Pavlicic v. Vogtsberger,* 136 A.2d 127, 130 (Pa. 1957):

> A gift given by a man to a woman on condition that she embark on the sea of matrimony with him is not different from a gift based on the condition that the donee sail on any other sea. If, after receiving the provisional gift, the donee refuses to leave the harbor,— if the anchor of contractual performance sticks in the sands of irresolution and procrastination—the gift must be restored to the donor.

Wisconsin, too, has long acknowledged the distinction between absolute and conditional gifts. Where a gift of personal property is made with the intent to take effect irrevocably, and is fully executed by unconditional delivery, it is a valid gift *inter vivos. Will of Klehr,* 147 Wis. 653, 658, 133 N.W. 1105, 1107 (1912). Such a gift is abso-

lute and, once made, cannot be revoked. *Guenther v. Guenther,* 244 Wis. 386, 393, 12 N.W.2d 727, 730 (1944). A gift, however, may be conditioned on the performance of some act by the donee, and if the condition is not fulfilled the donor may recover the gift. *Conway v. Town of Grand Chute,* 162 Wis. 172, 174, 155 N.W. 953, 954 (1916).

We find the conditional gift theory particularly appropriate when the contested property is an engagement ring. The inherent symbolism of this gift[2] forecloses the need to establish an express condition that marriage will ensure. Rather, the condition may be implied in fact or imposed by law in order to prevent unjust enrichment. *Gikas v. Nicholis,* 71 A.2d 785, 785–86 (N.H. 1950).[3] In Wisconsin, the undergirding theory for recovery on the basis of unjust enrichment is quasicontractual:

> A quasi contract means that there is no contract in fact but the parties will be treated under the circumstances

---

[2] Commenting on the symbolic nature of engagement rings in a case similar to the one before us, a New York trial court observed:

> The ring is employed in rites of courtship and marriage in many cultures, primitive and sophisticated; in widely dispersed regions of the earth; persisting through the centuries, in fact millienia [sic]. In our culture, the ring generally is placed on one of the fingers, in others it may be attached to other positions of the anatomy, at intermediate points from the top of the head to the tip of the toes. It is a universal symbol of deep seated sexual and social ramifications, a seminal area of research for behavioral scientists. Is it any wonder that it presents such complicated problems for mere lawyers?

*Goldstein v. Rosenthal,* 288 N.Y.S.2d 503, 504 (Civ. Ct. 1968).

[3] The *Gikas* court, in allowing recovery of an engagement ring, clearly distinguished the ring from several miscellaneous gifts made by the spurned suitor. The latter were "personal gratuities upon which the law imposes no condition of return and are more nearly akin to a Christmas present." *Gikas,* 71 A.2d at 786. In the instant case, the interrogatories established that Brown gave Thomas several items of jewelry during their courtship. No action for their recovery, however, was initiated, and the trial court properly limited testimony in this area.

327

as if there had been a contract. . . . Recovery is based upon the universally recognized moral principle that one who has received a benefit has the duty to make restitution when to retain such benefit would be unjust.

. . . .

The essential elements of a quasi contract entitling one to judgment for unjust enrichment are: (1) A benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) the acceptance or retention by the defendant of such benefit under circumstances such as it would be inequitable to retain the benefit without payment of the value thereof.

*Fullerton Lumber Co. v. Korth,* 37 Wis. 2d 531, 536–37, 155 N.W.2d 662, 664–65 (1968) (citations omitted). We therefore conclude that Brown has a cause of action based on the theory of conditional gift and unjust enrichment which is not precluded by ch. 768, Stats.

■

We acknowledge that most jurisdictions allow recovery of conditional engagement gifts only if the party seeking recovery has not unjustifiably broken off the engagement. *See Wilson v. Dabo,* 461 N.E.2d 8, 9 (Ohio App. 1983); Restatement of Restitution § 58 comment c (1937). We decline to join them. As the record of this two-day jury trial demonstrates, the answer to the multiple question "who broke off the engagement, when, and was he/she justified?" is often lost in the murky depths of contradictory, acrimonious, and largely irrelevant testimony by disappointed couples, their relatives and friends. The better approach was persuasively stated by the high court of New York in *Gaden v. Gaden,* 323 N.Y.S.2d 955, 961–62 (1971):[4]

---

[4] The parties in this case were a divorced couple who subsequently cohabited. The conditional gift at issue was made in contemplation of their remarriage.

The purpose of the initial heart balm legislation was to rid the courts of these actions where the "wounded" party appears in court to unfold his or her sorrows before a sympathetic jury. To require a determination of fault in order to entitle one to recover engagement gifts would simply condone this same type of action in yet another form. The result would be to encourage every disappointed donee to resist the return of engagement gifts by blaming the donor for the breakup of the contemplated marriage, thereby promoting dramatic courtroom accusations and counter-accusations of fault.

In truth, in most broken engagements there is no real fault as such—one or both of the parties merely changes his [or her] mind about the desirability of the other as a marriage partner. Since the major purpose of the engagement period is to allow a couple time to test the permanency of their feelings, it would seem highly ironic to penalize the donor for taking steps to prevent a possibly unhappy marriage. . . .

Just as the question of fault or guilt has become largely irrelevant to modern divorce proceedings, so should it also be deemed irrelevant to the breaking of the engagement. [Citation omitted.]

We therefore hold that the only relevant inquiry in conditional engagement gift cases is whether the condition under which the gift was made, i.e. "in contemplation of marriage," has failed.

Accordingly, we conclude that the public policy embodied in Wisconsin's no-fault divorce law, ch. 767, applies to actions for recovery of gifts conditioned on marriage. Thus, an inquiry as to how the engagement was dissolved is not necessary in a common law action based on the theory of conditional gift and unjust enrichment. In commenting on the public policy decisions that led to the adoption of no-fault divorce in Wisconsin, our supreme court stated:

> Establishing blame for the failure of a marriage was a primary function under the prior divorce law. It was also the primary basis for criticism of that law and led to its repeal. The proponents of no-fault divorce pointed out, and the legislature apparently agreed, that usually the conduct of both spouses contributes to the failure of a marriage [and] that establishing guilt and innocence is not really useful . . . .

*Dixon v. Dixon,* 107 Wis. 2d 492, 502, 319 N.W.2d 846, 851 (1982). This persuasive policy statement, which governs our approach to broken marriages, is equally relevant to broken engagements. We therefore apply the no-fault policy inherent in ch. 767 to common law actions maintainable under ch. 768. The former chapter deals with unhappy results; the latter with unhappy preliminaries. The subject matter, however, is essentially the same, and statutes relating to the same subject matter may be considered in construing a statutory provision. *Kollasch v. Adamany,* 104 Wis. 2d 552, 563, 313 N.W.2d 47, 53 (1981).

We now turn to the specifics of the instant case. Brown initiated this suit as an action in replevin, alleging that Thomas had "wrongfully detained" the engagement ring. He sought not only the return of the ring, but also "interest" and "damages." These latter two remedies are contrary to the purpose of ch. 768 and generally inappropriate in cases of this kind, especially when we consider that "loss of use" and punitive damages may also be sought in replevin actions. *Durham v. Pekrul,* 104 Wis. 2d 339, 342, 311 N.W.2d 615, 616 (1981).[5] Brown's recov-

---

[5] It is only when the plaintiff alleges fraud pursuant to sec. 768.06, Stats., that the full panoply of tort damages may be available. *See Gyldenvand v. Schroeder,* 90 Wis. 2d 690, 698, 280 N.W.2d 235, 239 (1979) (plaintiff in deceit action may recover both consequential and general damages); *Jeffers v. Nysse,* 98 Wis. 2d 543, 553, 297 N.W.2d 495, 499

ery, therefore, should be limited to *in specie* restitution, *i.e.* return of the conditional gift or its equivalent value.

Brown also contends that the trial court erred in excluding certain hearsay evidence. At trial, Louise Wisinski denied that Thomas told her that Brown would "never amount to anything" and that she (Thomas) had called off the engagement. Brown sought to elicit impeachment testimony from three other witnesses to the effect that Wisinski had told each of them that Thomas had indeed made these statements. The trial court ruled that this proffered testimony was inadmissible hearsay, remote and irrelevant. A trial court has wide discretion to admit or to refuse to admit evidence. *Christensen v. Economy Fire & Casualty Co.,* 77 Wis. 2d 50, 55, 252 N.W.2d 81, 84 (1977). Because we have determined that an inquiry into

(1980) (punitive damages may be awarded in cases of fraudulent inducement).

This distinction between available remedies brings secs. 768.01, 768.02 and 768.06, Stats., into harmony. Sections 768.01 and 768.02 abolish common law actions aimed at recovering damages for the alleged emotional harm caused by the breach of promise to marry. Section 768.06, in allowing the recovery of property obtained by fraud, is not the exclusive remedy suggested by the trial court, but rather is declaratory of the common law. Such a declaration is a useful guide to our courts since other jurisdictions have split sharply on the issue of whether the statutory abolition of breach of promise actions precludes a suit based on fraud or deceit. In *Piccininni,* 429 A.2d 886 (Conn. 1980), the plaintiff alleged that he spent $40,000 to renovate his home due to the defendant's promise to marry him and occupy the refurbished house. His action was based on counts of breach of contract, false representation and unjust enrichment, but the trial court dismissed the fraud claim. Although a majority of the Connecticut Supreme Court reversed, a vigorous dissent insisted that the conditional gift/unjust enrichment theory of recovery was the only valid claim because "a cause of action in deceit carries with it the capacity to generate claims for mental distress and punitive damages that will only exacerbate the opportunity for blackmail that the Heart Balm Act was intended to prevent." *Id.* at 889 (Peters, J., dissenting) (citations omitted).

331

the circumstances surrounding the dissolution of the engagement is not relevant, we affirm the trial court's evidentiary ruling.

*By the Court.*—Judgment reversed and cause remanded.