**John J. FIERRO, Appellant,**

v.

**Janan HOEL, Appellee.**

No. 89–1570.

Court of Appeals of Iowa.

Dec. 27, 1990.

---

Thomas T. Tarbox of Smith, Schneider, Stiles, Mumford, Schrage, Zurek, Wimer & Hudson, P.C., Des Moines, for appellant.

Robert G. Bridges of Bridges & Frampton, Des Moines, for appellee.

Considered by SCHLEGEL, P.J., and HAYDEN and HABHAB, JJ., but decided en banc.

DONIELSON, Judge.

The question before us is whether an engagement ring is a conditional gift or a completed gift upon delivery. The district court concluded that because John Fierro had placed no express conditions on the ring at the time possession was transferred to Janan Hoel, the engagement ring was a completed gift upon delivery. We hold an engagement ring is an inherently conditional gift and we therefore reverse.

Fierro and Hoel became engaged shortly before Thanksgiving in 1987. At the time of the proposal, Fierro presented Hoel with a 1.37 carat diamond in a platinum setting valued at approximately $9,000. The news of their engagement was shared with family and friends and wedding plans began.

Upon deciding they wanted to live in an area near Manhattan, Fierro began to look for various homes in the New York area. After showing Hoel several prospective home sites, Janan decided to let John conduct the search. Fierro eventually found a condo in suburban New York for $121,000. In order to finance the purchase Fierro borrowed the money from his parents, who had mortgage contracts drawn up. During this process Hoel thought the condo was to be a gift from Fierro's parents. However, upon a visit in early 1989, Fierro presented Hoel with the mortgage contract and requested her signature. Hoel refused to sign and stated she wanted to talk it over with her father. Several days later, shortly before his departure, Fierro again asked Hoel to sign the papers. After several more communications Fierro broke off the engagement, in March 1988.

Fierro asked Hoel to return the ring but Hoel refused. Further unsuccessful attempts to obtain the ring eventually resulted in Fierro filing the present lawsuit, seeking to establish the ownership of the ring.

Relying on *Coconis v. Christakis*, 70 Ohio Misc. 29, 435 N.E.2d 100 (W.D.Ohio 1981), the district court ruled that a condition of marriage placed upon an engagement ring must be express and clearly understood by the donee at the time of delivery of the gift. Because Fierro had not expressly stated a condition at the time he gave the ring to Hoel, the engagement ring was a completed gift upon delivery. Fierro appeals. He argues the engagement ring was symbolic of the parties' commitment to marry and inherently conditioned upon their subsequent marriage. He contends that when a couple terminates their engagement, the ring must be returned to the donor.

Our scope of review in this equity action is de novo. Iowa R.App.P. 4. We review the facts and law of the case and determine the appropriate disposition under all the circumstances. *Medd v. Medd*, 291 N.W.2d 29, 32 (Iowa 1980). While we give weight to the findings of the trial court, we

are not bound by them. Iowa R.App.P. 14(f)(7).

No other Iowa case has been found addressing engagement gifts but Iowa gift law is well established.

> If an unqualified transfer to the donee is proved, one asserting the delivery was made on some condition or trust has the burden of establishing such condition or trust. 38 C.J.S. Gifts § 65.

> Plaintiff is required to carry the burden on this issue by a preponderance of the evidence, " * * * [but] this is not a fixed or unvarying standard. What would be sufficient to constitute a preponderance of the evidence and to sustain a judgment in an ordinary case might not suffice in another, where, in addition to the burden resting upon the plaintiff in any case, particular presumptions are to be overcome...." *Hein v. W.T. Rawleigh Company*, 167 Neb. 176, 92 N.W.2d 185, 190.

*Frederick v. Shorman*, 259 Iowa 1050, 1056, 147 N.W.2d 478, 482 (1966).

The trial court in the present case determined, in essence, that no condition on an engagement ring can be proved unless "explicit and known" at the time of delivery. The quoted language from *Frederick* does not require that conclusion ("When an unqualified transfer to the donee is proved, ...") and we refuse to impose such a burden. At the moment of a marriage proposal, couples are least inclined to utter any disparaging comments concerning the longevity of the relationship. We believe that requiring a donor of an engagement ring to state her or his intentions "in the alternative" is unduly harsh and unnecessary.

An engagement ring given in contemplation of marriage is an impliedly conditional gift. The jurisdictions which have considered cases dealing with the gift of an engagement ring uniformly hold that marriage is an implied condition of the transfer of title and that the gift does not become absolute until the marriage occurs.[1] *See* Annotation, *Rights in Respect of Engagement and Courtship When Marriage Does Not Ensue*, 46 A.L.R.3d 578 (1972). One court explained,

> Where a gift of personal property is made with the intent to take effect irrevocably, and is fully executed by unconditional delivery, it is a valid gift inter vivos. [ ] Such a gift is absolute and, once made, cannot be revoked. [ ] A gift, however, may be conditioned on the performance of some act by the donee, and if the condition is not fulfilled the donor may recover the gift. [ ]

> We find the conditional gift theory particularly appropriate when the contested property is an engagement ring. *The inherent symbolism of this gift [ ] forecloses the need to establish an express condition that marriage will ensue.* Rather, the condition may be implied in fact or imposed by law in order to prevent unjust enrichment.

*Brown v. Thomas*, 127 Wis.2d 318, 379 N.W.2d 868, 872 (App.1985) (citations and footnote omitted; emphasis added). Like the *Brown* court, in a contested property case involving an engagement ring given in contemplation of marriage, we hold there is no need to establish an express condition that marriage will ensue. A party meets the burden of establishing the conditional nature of the gift by proving by a preponderance of evidence that the gift was given in contemplation of marriage.

Once we recognize an engagement ring is a conditional gift, the question still remains: who gets the gift when the condition is not fulfilled? The obvious answer is the gift must be returned to the donor. However, an older majority line of cases follows the general principle that the donor of an engagement ring can recover the gift only if the engagement is dissolved by

---

1. *Coconis v. Christakis* recognized that an engagement ring is an inherently conditional gift. ("There is no dispute between the parties herein that the ring was given in contemplation of marriage, thus placing it in the category of a conditioned gift ..." 70 Ohio Misc. at 30, 435 N.E.2d at 101.) The *Coconis* court's comments concerning express conditions were made in response to the appellant's arguments attempting to circumvent the "fault" principle which disallows the donor the return of the ring when the donor "unjustifiably" terminates the engagement.

agreement or if the engagement is unjustifiably broken by the donee. In other words, these jurisdictions refuse to enforce the condition on the gift if the donor unjustifiably terminates the engagement. *See generally* Annotation, 46 A.L.R.3d at 602–04. The critical inquiry in cases following these principles is who was at "fault" for the termination of the relationship. The party to an engagement who was unjustifiably jilted became the owner of the ring—a type of "consolation prize." One court has found the fault rule "sexist and archaic." *Aronow v. Silver*, 223 N.J. Super. 344, 348, 538 A.2d 851, 853 (1987).

> In [ancient] England, women were oppressed by the rigidly stratified social order of the day. They worked as servants, or if not of the servant class, were dependent on their relatives. The fact that men were in short supply, marriage above one's station was rare and travel difficult abbreviated betrothal prospects for women. Marriages were arranged. Women's lifetime choices were limited to a marriage or a nunnery. Spinsterhood was a centuries-long personal tragedy. Men, because it was a man's world, were much more likely than women to break engagements. When one did, he left behind a woman of tainted reputation and ruined prospects. The law, in a *de minimus* gesture, gave her the engagement ring, as a consolation prize. When the man was jilted, a seldom thing, justice required the ring's return to him. Thus the rule of life was the rule of law—both saw women as inferiors.

*Id.* The *Aronow* court concluded, in an engagement setting, fault is irrelevant.

> What fact justifies the breaking of an engagement? The absence of a sense of humor? Differing musical tastes? Differing political views? The painfully-learned fact is that marriages are made on earth, not in heaven. They must be approached with intelligent care and should not happen without a decent assurance of success. When either party lacks that assurance, for whatever reason, the engagement should be broken. No justification is needed. Either party

may act. Fault, impossible to fix, does not count.

*Id.* at 349, 538 A.2d at 853–54. Like the *Aronow* court, this court believes fault, in an engagement setting, is irrelevant. We reject this "fault" approach.

This court adopts the "no fault" approach followed in a minority of jurisdictions. *E.g., Brown v. Thomas*, 127 Wis.2d 318, 379 N.W.2d 868 (App.1985). "Since the major purpose of the engagement period is to allow a couple time to test the permanency of their feelings, it would seem highly ironic to penalize the donor for taking steps to prevent a possibly unhappy marriage...." *Gaden v. Gaden*, 29 N.Y.2d 80, 88, 323 N.Y.S.2d 955, 962, 272 N.E.2d 471, 476 (1971).

In summary, we hold an engagement ring given in contemplation of marriage is an impliedly conditional gift; it is a completed gift only upon marriage. If the wedding is called off, for whatever reason, the gift is not capable of becoming a completed gift and must be returned to the donor.

In our de novo review of the record before us, we conclude that Fierro made the gift of the engagement ring upon the implied condition that if the contemplated marriage did not occur, Hoel would return the ring. Because the engagement was terminated and no marriage occurred, Fierro is entitled to the return of the ring, or its value.

For the reasons stated, we reverse the judgment and remand for further proceedings in accordance with this opinion.

REVERSED.

.

All Judges concur except HAYDEN, J., who dissents.

HAYDEN, Judge (dissenting).

I respectfully dissent.

The additional factual background in this case is John had given Janan a pin that belonged to his grandmother. He told Janan explicitly the pin was to be returned to him if they ever broke up. Later when John gave her the ring he placed no conditions on it when she received it. The trial

court weighed and considered this evidence. The trial court ruled John had ended the engagement and had placed no conditions on the ring as he had done on the heirloom pin.

The question before us in this case is was the ring a gift conditioned on marriage or was the ring an unconditional gift. The Iowa Supreme Court has stated what the appropriate burden of proof should be when it is claimed there is a conditional gift:

If an unqualified transfer to the donee is proved, one asserting the delivery was made on some condition or trust has the burden of establishing such condition or trust.

*Frederick v. Shorman,* 259 Iowa 1050, 1056, 147 N.W.2d 478, 482 (1966). Thus, if the gift elements are proven, John has the burden of proof to show the gift was conditioned on marriage.

The three essential elements for an inter vivos gift are donative intent, delivery and acceptance. *Raim v. Stancel,* 339 N.W.2d 621, 623 (Iowa App.1983); *Gray v. Roth,* 438 N.W.2d 25, 29 (Iowa App.1989). There is no question there has been a delivery and an acceptance. In this situation John actually handed the ring to Janan on November 25, 1987, and she accepted it and kept the ring in her possession. The remaining question is what was John's intent at the time he gave Janan the ring.

The donative intent of the grantor is the controlling consideration. *Raim,* 339 N.W.2d at 623. The donor must make an actual transfer and pass all rights and dominion over the gift to the donee. *Varvaris v. Varvaris,* 255 Iowa 800, 803, 124 N.W.2d 163, 165 (1963). An inter vivos gift operates immediately and irrevocably. *Id.*

In this case the intention of John was evident from the testimony presented. Janan was responsible for the purchase and payment of the insurance on the ring. Also the ring was referred to by the parties at all times as "her ring." Finally, a demand for the return of the ring was not made until nearly 30 days after John called off the engagement. Thus, it is evident the

requirements for a gift were completed unless a condition was proved otherwise.

If John had imposed a condition of marriage on the gift of the ring, such a requirement must have been explicit and known. One court has noted in light of the intricacies of the parties in such situations, "it is not unduly harsh to require that such a reservation be expressed and clearly understood by donee at the time of delivery of the gift." *Coconis v. Christakis,* 70 Ohio Misc. 29, 435 N.E.2d 100, 102 (W.D.Ohio 1981). Thus, if John had wanted such a condition on the gift, he should have made this known and clearly understood at the time he gave possession of the ring to Janan.

There is evidence John was aware of the need to clearly express such a condition when giving this type of a gift. John had made a condition of marriage a requirement for a previous gift of heirloom jewelry he had given to Janan. If the engagement was broken, the piece of heirloom jewelry would be returned. After the engagement was broken, the piece of heirloom jewelry was promptly returned. If John wanted the ring returned, he could have expressed such a condition as he did with the heirloom jewelry. Absent any such evidence of a condition, I determine the giving of the ring is a valid completed gift.

There is a prevalence of government rules and regulations in most areas of our social life. The matter of engagement gifts is uniquely suited to regulation and responsibility solely by the couple involved. This is their personal business. The court should not interject an exception to accepted legal standards into such a private situation absent compelling circumstances, which are not present here.

When a couple discusses marriage it is not ordinarily done in a public forum. Communications at these times are usually made in private by spoken word, rather than in writing or witnessed by others. Little evidence other than the parties' own recollections is available. Either party could assert the existence or lack of conditions allowing a deviation from the majori-

ty's proposed "no fault" rule. In such a case, essentially all that has been accomplished is a shifting of the burden of proof.

Courts are well versed in elicitation of parties' intentions in such matters as construing contracts. This would allow each case to be decided upon its individual merits. The majority attempts to establish a bright line test to avoid unnecessary litigation. I observe this situation has arisen so infrequently, no prior Iowa cases appear on this issue.

I acknowledge parties are free to return engagement gifts. However, proper social etiquette does not demand their return, and neither should the courts as a matter of law.

I determine the giving of the ring by John to Janan is a valid, unconditional completed gift. I would affirm the trial court in all respects.