JUSTICE TRIEWEILER
concurring and dissenting.
¶49 Gender discrimination is a bad thing. I am glad the majority is against it. However, I regret that the majority has taken this opportunity to declare their good intentions because gender equity has about as much to do with this case as banking law. Furthermore, the *43 parties in the District Court will be as surprised to hear about the basis on which this appeal has been resolved as I was when I read the proposed opinion. Principles of gender equity were never argued or even raised by the parties at any stage in the proceeding and the District Court had no opportunity to consider the relevance (or irrelevance) of Constitutional theory to any of the simple issues which were presented in the District Court.
¶50 The precedent established by this case leads to all sorts of interesting possibilities. If we accept the majority’s assumption that women are more likely to have to give back a conditional gift given in anticipation of marriage than men and that, therefore, traditional notions of gift law are no longer applicable because it is unfair, what should we do about maintenance? After all, don’t men more often pay maintenance than women? Is that fair? What should we do about child support? Couldn’t there be a statistical argument that men pay more child support than women? What should we do about paternity suits? Surely men are more frequently the defendants in paternity suits than women?
¶51 The simple fact is that if women are more likely to be the subject of an action to recover a conditional gift given in anticipation of a marriage which does not occur, it is because they are more frequently the recipient of the gift. Should we just prohibit gifts in anticipation of marriage altogether because men are more likely to have to pay for them? The possible implications of the majority’s decision are just beyond my comprehension.
¶52 Before today, no court anywhere in the world has ever held that a conditional gift given in anticipation of marriage cannot be recovered if the condition on which it was given, the marriage, does not occur because to require its return would violate notions of gender fairness. Nowhere at any time. It is no wonder the parties did not think of it. Before embarking on this radical, unprecedented departure from traditional notions of contract and gift law, shouldn’t we have at least asked the parties for their views? Shouldn’t we at least have some record for the unfounded assumption that one gender is more likely to be affected than the other?
¶53 This is a simple case involving the law of conditional gifts, decided by the District Court based on findings which are fully supported by the evidence and law as it has been applied throughout the country. The District Court opinion is well reasoned and fair. It should be affirmed. Therefore, I dissent.
¶54 The District Court in Finding No. 6 found that the ring at issue in *44 this case was referred to throughout the couple’s relationship as an “engagement ring.” It found in Finding No. 4 that the ring was presented to Michelle in contemplation of her marriage to Michael. The District Court found in Finding No. 7 that each time, except for the last time, the couple broke up (and they broke up frequently), the ring was either returned by Michelle or taken back by Michael. These findings were fully supported by the evidence. For example, Michael testified as follows:
Q. Now, when you gave her the engagement ring, were you contemplating that you were going to get married?
A. That was the whole idea.
Q. Was there any way in your mind that the engagement ring was just a ring and she could keep it whether you were married or not?
A. No.
Q. Is it correct that it was always in contemplation of marriage? A. Yes.
Q. Now, she testified that the engagement was on and off a couple of times at least; is that correct?
A. Yes.
Q. Okay. At any of those times when the engagement was off and the ring - or excuse me, at any of those times that the engagement was off, was the ring delivered back to you?
A. Yes.
Q. Every time?
A. Yes.
Q. I guess with the exception of the time she got on the airplane?
A. Right. That would be, that would be the only time that I can recall.
¶55 It is equally clear from the record that the engagement ring was treated differently by the couple than other gifts which had been given by Michael to Michelle while they were engaged. He testified as follows:
Q. Okay. Now, you heard her testify, didn’t you, about the other gifts you’d given her?
A. Yes, I did.
Q. The 1995 Mustang that cost about $24,000, was that in contemplation of getting married?
A. No.
Q. Have you ever made any demand that she return that to you?
A. No.
*45 Q. How about the diamond earrings that were the Christmas gift? Have you ever made any demands that she return those because they were given in contemplation of marriage?
A. No.
Q. How about the horse?
A. No.
Q. Any gift you gave her beside the engagement ring, did you ever contend that those other gifts were made in contemplation of marriage?
A. No. They were gifts. Those are gifts.
¶56 The testimony of one witness is substantial evidence which is sufficient to support the findings of the District Court. The District Court’s findings in this case were clearly supported by substantial evidence and were not clearly erroneous.
¶57 Based on the District Court’s findings, certain legal conclusions necessarily followed. First, the District Court concluded that courts in other jurisdictions have analyzed similar cases based on the theory of “conditional gift;” that the occurrence of the anticipated marriage was a condition on which the gift was given; and that because the condition was not fulfilled, plaintiff was entitled to recovery of the gift. The District Court was correct. In an A.L.R. annotation directly on point, the author validates the District Court’s position:
A predominant theory used in ordering recovery of engagement gifts to the donor relies upon the theory of conditional gifts. Many courts consider engagement gifts to be conditioned upon the subsequent marriage of the parties, and when such marriage does not take place, the condition has failed and the donor is entitled to recover the engagement gift. [Reference omitted.]
Elaine Marie Tomko, Annotation, Rights in Respect of Engagement and Courtship Presents When Marriage Does Not Ensue, 44 A.L.R. 5th 1, 18 (1996).
¶58 An example of a similar conclusion from another state is found at Heiman v. Parrish (Kan. 1997), 942 P.2d 631. In that case, under identical circumstances, the Supreme Court of Kansas came to the following conclusion and cited the following authorities:
In the absence of a contrary expression of intent, it is logical that engagement rings should be considered, by their very nature, conditional gifts given in contemplation of marriage. Once it is established the ring is an engagement ring, it is a conditional gift.
Other courts have reached a similar conclusion. See Simonian *46 v. Donoian, 96 Cal.App.2d 259, 215 P.2d 119 (1950); White v. Finch, 3 Conn. Cir. Ct. 138, 209 A.2d 199 (1964); Gill v. Shively, 320 So.2d 415 (Fla.App. 4 Dist. 1975); Vann v. Vehrs, 260 Ill.App.3d 648, 198 Ill.Dec. 640, 633 N.E.2d 102 (1994); Harris v. Davis, 139 Ill.App.3d 1046, 94 Ill.Dec. 327, 487 N.E.2d 1204 (1986); Fierro v. Hoel, 465 N.W.2d 669 (Iowa App. 1990); Aronow v. Silver, 223 N.J.Super. 344, 538 A.2d 851 (1987); Mate v. Abrahams, 62 A.2d 754 (N.J. County Ct. 1948); Vigil v. Haber, 119 N.M. 9, 888 P.2d 455 (1994); Wion v. Henderson, 24 Ohio App.3d 207, 494 N.E.2d 133 (1985); Lyle v. Durham, 16 Ohio App.3d 1, 473 N.E.2d 1216 (1984); Spinnell v. Quigley, 56 Wash.App. 799, 785 P.2d 1149 (1990); Brown v. Thomas, 127 Wis.2d 318, 379 N.W.2d 868.
Heiman, 942 P.2d at 634.
¶59 Second, the District Court concluded that it was irrelevant which party was at fault for breaking off the engagement. The District Court concluded that application of fault principles to the “conditional gift” theory is contrary to the modern trend and inconsistent with Montana law which disallows consideration of fault for even the dissolution of marriage. The District Court was also correct when it arrived at this conclusion. In the annotation previously cited, Tomko states:
More recently, courts have declined to consider “fault” in looking at the broken engagement and have concluded that, without regard to fault, the donor is entitled to recover any engagement gifts made to the donee, in the absence of statute or special circumstances requiring the application of some paramount rule to the contrary. [Reference omitted.]
44 A.L.R. 5th at 20.
¶60 An example of the modern trend to disregard fault under circumstances such as those presented in this case is found at Fierro v. Hoel (Iowa Ct. App. 1990), 465 N.W.2d 669. In that case the plaintiff also sought return of an engagement ring following defendant’s decision to break off the couple’s engagement. The Iowa Court of Appeals concluded that an engagement ring given in contemplation of marriage is an impliedly conditional gift. Fierro, 465 N.W.2d at 672. The court recognized that an older line of cases limited a donor’s recovery of the gift to situations where the engagement is dissolved by agreement or unjustifiably broken by the donee. However, the court concluded that the notion of one party being at blame for the termination of an engagement is archaic and outdated. It cited the following language from Aronow v. Silver (N.J. Super. Ct. Ch. Div. *47 1987), 538 A.2d 851, 853-54:
What fact justifies the breaking of an engagement? The absence of a sense of humor? Differing musical tastes? Differing political views? The painfully-learned fact is that marriages are made on earth, not in heaven. They must be approached with intelligent care and should not happen without a decent assurance of success. When either party lacks that assurance, for whatever reason, the engagement should be broken. No justification is needed. Either party may act. Fault, impossible to fix, does not count.
Fierro, 465 N.W.2d at 672.
¶61 The Iowa court then concluded that:
Like the Aronow court, this court believes fault, in an engagement setting, is irrelevant. We reject this “fault” approach.
This court adopts the “no fault” approach followed in a minority of jurisdictions. E.g., Brown v. Thomas, 127 Wis.2d 318, 379 N.W.2d 868 (App. 1985). “Since the major purpose of the engagement period is to allow a couple time to test the permanency of their feelings, it would seem highly ironic to penalize the donor for taking steps to prevent a possibly unhappy marriage....” Gaden v. Gaden, 29 N.Y.2d 80, 88, 323 N.Y.S.2d 955, 962, 272 N.E.2d 471, 476 (1971).
Fierro, 465 N.W.2d at 672.
¶62 Finally, the District Court concluded that § 27-1-602, MCA (referred to in the majority opinion as Montana’s “heart balm” statute), is not applicable in an action to recover a gift made in contemplation of marriage. The District Court noted that the majority ofjurisdictions have held that “heart balm” statutes bar actions for damages, such as humiliation, which arise as a consequence of breaching a promise to marry but have no effect with regard to recovery of gifts. Once again, the District Court was correct. In the Tomko annotation relied upon in most recent cases and cited by both parties in this case, she states:
In a number of states, the breach-of-promise action has been abolished, though it has generally been held that the recovery of engagement gifts does not fall among the barred actions. Statutes abolishing breach-of-promise suits are commonly referred to as “heart balm” statutes because they permit the former lovers’ heartaches to heal without recourse to the courts. The purpose of the heart balm statutes was originally “to avert the perpetration of fraud by adventurers or adventuresses who were prone to use the threat of a breach of promise of marriage action to compel *48 overapprehensive and naive defendants to make lucrative settlements in order to avoid embarrassing and lurid notoriety which accompanied litigation of this character.” Most courts will not use these statutes, however, to protect a party who received an engagement gift under fraudulent circumstances, or where a conditional gift theory is to be applied. [Emphasis added.]
44 A.L.R. 5th at 27.
¶63 An example of the type of decision referred to in Tomko’s annotation is Pavlicic v. Vogtsberger (Pa. 1957), 136 A.2d 127, 130, in which the Pennsylvania Supreme Court held that that state’s “Heart Balm Act,” while abolishing causes of action for breach of contract to marry, “in no way alters the law of conditional gifts.”
¶64 What has been said so far in this Opinion is all that was necessary in order to resolve the issues presented to the District Court and to this Court on appeal. The District Court’s findings were supported by substantial evidence and were not clearly erroneous. The District Court’s conclusions of law were correct.
¶65 However, the majority is not content to review the issues presented based on the facts which were proven and the legal authorities which have been submitted. The majority instead, without any factual basis in the record, explores what it finds are “some American customs associated with engagement rings” and turns this simple property dispute based on traditional rules of gift law into a battle of the sexes with constitutional implications. Considering the significance we have now attached to this case, does it strike anyone else as odd that we haven’t asked the parties for any input on these critical issues?
¶66 The practical problems arising from the majority’s impulsiveness become quickly apparent. For example, a predicate to its gender inequity approach is its conclusion that “anti-heart balm” statutes have “closed courtrooms across the nation to female plaintiffs seeking damages.” What is the factual basis for assuming that women are more likely to seek damages for breach of a promise to marry than men? Tomko’s annotation would suggest that gender is not a factor. She states that the purpose of heart balm statutes was originally “to avert perpetration of fraud by adventurers or adventuresses ....” 44 A.L.R. 5th at 27. There is no authority provided for the quantum leap taken by the majority. It must be so simply because the majority says so.
¶67 The next step in the majority’s shaky syllogism is its unsupported conclusion that “[cjonditional gift theory applied exclusively to engagement ring cases carves an exception in the state’s gift law for *49 the benefit of predominantly male plaintiffs.” Furthermore, the majority states that while “Montana’s ‘anti-heart balm’ statute... bars all plaintiffs from recovering any share of non-refundable expenses incurred in planning a cancelled wedding,” it assumes that women usually incur these expenses. The majority’s conclusion from these unsupported assumptions is that, therefore, we cannot, in fairness, enforce conditional gift law when it pertains to engagement rings.
¶68 First of all, either gender can given an engagement ring. For example, in Vigil v. Haber (N.M. 1994), 888 P.2d 455, the parties exchanged engagement rings. However, their relationship deteriorated, the couple separated, and following their separation a hearing examiner determined that the parties should return the rings they had given each other. The plaintiff immediately returned the ring he had along with other of the defendant’s possessions. However, the defendant objected to returning the engagement ring that had been given to her. The New Mexico Supreme Court held that the ring was a conditional gift dependant on the parties’ marriage and should be returned. Vigil, 888 P.2d at 458. What if the roles had been reversed and the woman had returned the engagement ring given to her but the man had refused to do so? According to this Court, she would not be allowed to recover the engagement ring that she had given to her fiancé, no matter how substantial the value and unfair the result because requiring the return of engagement rings is unfair to women.
¶69 The second problem with the majority’s assumptions is the assumption that conditional gift law as it relates to gifts exchanged in anticipation of marriage only applies to wedding rings. It does not. For example, in Pavlicic, a case which disproves the theory that jurisprudence cannot be written in readable prose, the plaintiff was a 75-year-old man when the 26-year-old defendant asked for his hand in marriage. While he first protested on the basis of his age, she assured him that she was no longer interested in “young fellows” and prevailed upon him to make the commitment. Over the course of the next four years, she then prevailed upon him to pay the mortgage on her home, buy her two new cars, an engagement ring, a diamond for her mother’s ring, remodel her house, and advance her $5000 to purchase a saloon which they could jointly operate. The problem was that after she received the money for the saloon, she disappeared. She was next seen in another town operating Ruby’s bar and married to a man two years her junior. As noted by the Pennsylvania Supreme Court:
When George emerged from the mists and fogs of his disappointment and disillusionment he brought an action in *50 equity praying that the satisfaction of the mortgage on Sara Jane’s property be stricken from the record, that she be ordered to return the gifts which had not been consumed, and pay back the moneys [sic] which she had gotten from him under a false promise to marry.
Pavlicic, 136 A.2d at 129.
¶70 The Pennsylvania Supreme Court held that George’s action was not barred by the state’s “Heart Balm Act” and that all gifts, not just the wedding ring, were conditional gifts in anticipation of marriage which must be returned or repaid. The Pennsylvania Supreme Court cited Stanger v. Epler (1955), 115 A.2d 197, 199, stating:
A gift to a person to whom the donor is engaged to be married, made in contemplation of marriage, although absolute in form, is conditional; and upon breach of the marriage engagement by the donee the property may be recovered by the donor. See also 38 C.J.S. Gifts § 61.
Pavlicic, 136 A.2d at 131.
¶71 The point is that there is no reason to limit the law of “conditional gifts” in anticipation of marriage to engagement rings. There is precedent for applying it to all gifts in anticipation of marriage and had either of the parties had any forewarning that this Court would have launched into the gender equity issue on which it bases its opinion, they could have pointed that out.
¶72 Also predicate to the majority’s decision is its conclusion that the District Court implied that marriage was a condition to the gift. However, as previously noted, the Court implied no such thing. The Court made a finding that the gift was given in anticipation of marriage based on the testimony that was presented. The majority has simply chosen, as a matter of law, to ignore those facts in favor of the social theory it has chosen to impose on the parties and the people of this state without the benefit of input from anyone else.
¶73 I concur with the Court’s conclusions that the District Court did not err when it held that Albinger was not entitled to reimbursement for Harris’ telephone calls and when it awarded Harris damages for her pain and suffering.
¶74 However, I object to the gender stereotypes on which the majority Opinion is based and without which the majority could not have arrived at their legal conclusion, and I object to the majority’s trivialization of something as important as equal rights by attaching them to the simple dispute involved in this case.
¶75 I dissent from the majority’s conclusion that Montana, unlike any *51 other jurisdiction which has considered this issue, should not apply traditional “conditional gift” or contract law to the resolution of the dispute between the parties. I dissent from the majority’s interesting but inapplicable and factually unsupported social commentary and its interjection and ultimate reliance on constitutional theory which was never raised by any party, never considered by the District Court, and on which neither party had an opportunity to comment. The Opinion is based on sexual stereotypes, false assumptions unsupported by the record, constitutional theory never raised or considered by the parties or the District Court, and social theory that has nothing to do with the case as it was considered by the District Court or developed by the parties. In short, it breaks just about every rule of appellate decision-making.
¶76 I dissent from the majority’s transformation of a simple case involving gift law to a soap box on which to analyze social customs and significant constitutional rights which have now been trivialized by their interjection in this case.