OPINION OF THE COURT
David M. Brockway, J.
PACTS
Plaintiff Soderholm brings this small claims action seeking restitution in the amount of $2,500, arising out of moneys spent by plaintiff during cohabitation with Kosty. The claim, filed April 16, 1998, seeks reimbursement for expenditures made between September of 1994 through February of 1996.
There is no dispute that the parties, both students at Corning Community College at the time, decided to reside together and did so commencing in September of 1994. The relationship eventually soured and resulted in the breakup of the parties in December of 1995. During this time, the parties engaged in a sexual relationship as well. An attempt at reconciliation in February of 1996 failed. Soderholm attempts collection of $2,239.59, together with $260.41 as compensation for telephone calls, a certified letter and “time wasted” in collection thereof.
Plaintiff kept fairly detailed notes regarding some of the various expenses of living during the time in question. This included some apparently contemporaneous entries of such items as magazines, school books, movie rentals, gasoline, utilities, rent, and some of defendant’s car payments. With the exception of an October 20, 1994 $25 payment to Soderholm in Kosty’s handwriting, none of these entries are initialed or otherwise agreed to by Kosty in writing. They are, in essence, self-serving. The more sizable claims, generally documented by way of plaintiff’s check entries, include $770.25 for Kosty’s share of the rent (representing 4 of the 16 months during which they resided together); $647.43 for car payments (representing payments to Binghamton Savings Bank towards 4 of 16 months of defendant’s car payments); and $311 (representing a payment to Prudential, a car repair bill, and a plane ticket). Those sums total $1,728.68. Soderholm bases his claim for reimbursement on both implied and express contract theory and on an “unjust enrichment” theory. It is not disputed that during this *405 period of time plaintiff often used defendant’s vehicle, including its use on a trip to North Carolina for a job interview. It should be noted that Kosty was employed during the periods in question.
DISCUSSION
“The complex and varied relationships between men and women, when they come to an end, oft leave a bitter residue and a smoldering irritation for which the salve, often the only soothing balm, is cash. It is a poor substitute for love, affection or attention, but for many its satisfactions are longer lasting”. (Trimmer v Van Bomel, 107 Misc 2d 201.) The termination of this informal “live-in” relationship sounds in what has been dubbed “palimony” or “companiomony”..
With respect to plaintiff’s claim under the theory of an implied contract, the court dismisses same. Such a claim in the surrounding of a cohabiting relationship is not only against New York’s public policy (as evidenced by the 1933 abolition of common-law marriages) but runs into too great a risk of error for a court, in hindsight, “to sort out the intentions of the parties and affix jural significance to conduct carried out within an essentially private and generally noncontractual relationship” (Morone v Morone, 50 NY2d 481, 488).
This court similarly dismisses any claim sounded in “unjust enrichment”. Although Justice Courts do have equitable powers to, in effect, create an implied contract based in equity, it must be shown that a defendant was (i) enriched; (ii) that the enrichment was at plaintiffs expense; and (iii) that equity and good conscience require defendant to return the money or the property to the plaintiff (see, 22A NY Jur 2d, Contracts, § 518). In the instant case, it cannot be said, given the over-all situation and the relationship between the parties, that defendant was unequivocally enriched, or, even if she were, that equity and good conscience would require restitution to the plaintiff. Defendant testified that there were numerous dinners, groceries, movies, clothes for plaintiff, and the like that she paid for on many occasions. Additionally, we know that as a matter of human experience, goods, services and financial advances are frequently rendered between two people not for remuneration but because they value each other’s company or because they find it a caring, convenient or rewarding thing to do. The same can be said for most expenses in a “live-in” relationship. Given the usual “give and take” normally associated with cohabitation, and the giving and receiving by *406 both here of love, affection, gifts and the like, it cannot be said that equity and good conscience cry out for fiscal adjustment.
Finally, plaintiff asserts that there was an express contract, obviously verbal in nature, which warrants reimbursement to him. Although the courts of New York, as noted above, have ruled that implied contracts “to compensate for those things which are ordinarily done by one person for another as a matter of regard and affection” are not recognized (Trimmer v Van Bomel, supra, at 206), our courts have long accepted the concept that an express agreement between unmarried persons living together is as enforceable as though they were not living together. Thus, “while cohabitation without marriage does not give rise to the property and financial rights which normally attend the marital relation, neither does cohabitation disable the parties from making an agreement within the normal rules of contract law” (Morone v Morone, supra, at 486). Nevertheless, even an express contract alleged to be verbal in nature presents problems of proof. Particularly in the context of cohabitation, it is subject to a greater risk of emotion-laden afterthought, fraud, ambiguity, and bitterness.
In the instant matter, the court finds that the plaintiff has sustained the necessary burden of proof only with respect to defendant’s share of the rent. Uncontroverted testimony established that Kosty was a colessee with regard to the apartments they rented. Apparently, she paid her share of the rent the other 12 months. The evidence is sufficient to spell out Kostys intent to be bound not only to the landlord but to plaintiff as well. This arrangement is little different from mere college roommates agreeing to share rental costs — clearly an enforceable obligation. No evidence was presented negating this intent.
But with respect to the other claims, while defendant’s own testimony indicated that she would on occasion state that she would pay plaintiff “the money’ “if she had it” at some vague future point in time (“when she got it”), any alleged understanding regarding these other items is absolutely too ambiguous to be called contractual. Basic contract law requires that a contract spell out a meaningful exchange of promises, clear in their intent and manner of execution. It is not for courts to fashion a contract where the parties have neglected to do so themselves. In this case, the plaintiff, years after the events, claims that various other sums are due him arising out of the cohabitation of the parties. However, at the time of the expenditures, it was not at all clear or unequivocal that the *407 parties had a “meeting of the minds” as to restitution. Indeed, plaintiff kept expending monies despite Kosty’s obvious lack of ability or intent to make reimbursement. Moreover, Kosty monetarily contributed to the relationship in other ways (see, supra, at 405) which may have served to offset Soderholm’s financial advances. To attempt to put judicial sanction on such vague arrangements and financial exchanges is not conceptually valid and cannot expect judicial enforcement. In short, “no specific dollar amounts were ever specified, no time for performance was ever set and no conditions as to the manner of payment were given, nor was anything ever said about what would happen if the relationship between the parties terminated” (Trimmer v Van Bomel, supra, at 207). Without more, these other expenditures, surrounded not by clear or third-party “IOU’s”, but by cohabitation, love, bliss, “somedays” and borrowed cars, do not a contractual debt make.
SUMMARY
Although the court might agree with plaintiff that Kosty may have financially “come out ahead” as a result of this cohabitation experience, it cannot be said that there is any judicially enforceable claim other than the joint tenancy obligation. In a day when even basic family computer legal forms contain “cohabitation agreements” and given the vagaries of love and love lost, this court finds that it continues to be against the public policy of this State to attempt enforcement of plaintiff’s other claims. The judiciary, in light of past legislative action, is still compelled to uphold the institution of marriage and to distinguish its contractual consequences from less formal and less permanent living arrangements (see, e.g., Civil Rights Law § 80-a). To hold otherwise would open the floodgates of Cupid’s failures and the consequential torrents of amorphous, imprecise claims and counterclaims, all asserted without benefit of a marital or other clear contract.
Accordingly, the court awards the sum of $770.25 and the costs of this action ($15) to Soderholm, as and for Kosty’s share of the rent. The other claims (including plaintiffs request for “collection costs” not provided for in a contract, as is required in New York) are dismissed.