OPINION OF THE COURT
Robert A. Lifson, J.
The litigation in the subject divorce action is centered on the determination of the rights of the parties to the former marital *437 residence, which was acquired prior to this marriage of brief duration. Although the facts are not capable of dispute the parties were unable to stipulate to them and instead spent three days of trial establishing facts of little import to the central issue.
At the onset of the trial, the court allowed the plaintiff to submit such proof as would establish the court’s jurisdiction over the parties and their marriage. The plaintiff also set forth a set of facts that sufficiently established a pattern of cruel and inhuman conduct on the part of the defendant as to entitle the plaintiff to a judgment of divorce. The defendant, under oath, indicated that he would neither admit nor deny such facts and stated his consent to the court’s granting the plaintiff a judgment of divorce on the grounds of cruelty.
Thereafter, the parties made motions with respect to the amendment of their pleadings. The court granted the motions to conform the pleadings to the proof without opposition. The plaintiff then requested leave to amend her pleadings to include an action for partition. The defendant vigorously resisted this application, claiming that such amendment during the trial was inherently prejudicial. The court granted the plaintiff’s motion. In so ruling the court noted that, in numerous court conferences, the court and the respective attorneys had explored all the various alternative theories on which the plaintiff’s relief could be predicated including, but not limited to, the application of equitable distribution, Domestic Relations Law § 234, partition, constructive trust and unjust enrichment. In the context of these discussions, both counsel were aware that equitable considerations would be paramount. In fact, the very equitable nature of all these theories made the counsel hesitant to stipulate to the central facts even though they were not in dispute. Neither party indicated that they had any intent to call any witnesses other than the litigants. Under these circumstances, the court could discern no irreparable prejudice to the defendant to allow the interposition of a cause of action which was inherent in the very issue to be decided from the inception of the litigation (see, in this regard, Mannix Indus. v Antonucci, 243 AD2d 449 [2d Dept 1997]; Noanjo Clothing v L & M Kids Fashion, 207 AD2d 436 [2d Dept 1994]). The plaintiffs motion for the amendment of the pleadings to include a cause of action for partition was granted.
The plaintiff testified that both parties had been married twice before. They met at an organization for divorced people. In fact, their particular topics of interest in their conversations *438 were their prior marriages and divorces. The plaintiff was very open with her financial affairs while the defendant was not. During their courtship, the plaintiff was very generous in giving gifts to the defendant including, inter alla, a gift of a valuable watch and an automobile with a value in excess of $12,000.
The parties discussed living together versus marriage. The defendant proposed and the plaintiff accepted, but the parties did not set a date for their wedding. Soon thereafter, the plaintiff decided to buy a home on Shelter Island to be closer to the defendant and in which the parties could live. The parties looked for the home together and decided on one. The plaintiff entered into a contract of sale, paid the down payment and, with the assistance of an attorney suggested by the defendant, made arrangements for the closing of title. The defendant made no financial contribution to the acquisition of the realty. Yet, on the date of the closing, a deed was tendered by the sellers which indicated that title was transferred to the plaintiff and defendant as joint tenants with rights of survivorship. The plaintiff asserted that she acted as she did because she knew the parties were to be married and she wanted to insure that the defendant would always have a home in the event of her death. The plaintiff claims it was never her intent to give the defendant an undivided one-half interest in her home.
Within weeks of the closing of title, the parties married and moved into the premises in question with the defendant’s 16-year-old son. All of the expenses attendant to the maintenance and upkeep of the home were paid by the plaintiff. The plaintiff claims that the defendant made no contributions to the household expenses. The plaintiff also testified that substantial improvements to the residence were made totaling $18,549 with minimal, if any, contribution from the defendant. Defendant, who was a painter by trade, painted several of the rooms in the house. The plaintiff claims that the defendant utilized all his earnings to supplement his investment portfolio.
Some 10 to 11 months later, the plaintiff decided to end the marriage. The present action ensued. The plaintiff went to Boston. Pursuant to a pendente lite order of this court, the defendant was awarded temporary occupancy of the premises in question. The plaintiff closed the joint checking account of the parties which, upon the initiation of the action, had a balance of $19,000. The plaintiff claims that any moneys in that account originated from her separate property. Plaintiff maintained her savings account at the same financial institution.
The plaintiff also sought the award of certain personalty free from any claim or offset of the defendant. Specifically, the *439 plaintiff testified that a certain engagement ring was exclusively hers. She alleged that she used the prior stone and setting from a former marriage. She then engaged a jeweler at Fortunoffs to modify the ring. Payment for this enhancement or modification of her jewelry was paid for from a joint checking account but the plaintiff claims the source of said payment was derived exclusively from her separate property.
The plaintiff indicates that during the marriage her gross marital estate was depleted by $30,000, exclusive of the impairment of her sole interest in the premises in question. She alleges that during this time defendant’s estate increased dramatically.
On cross-examination the plaintiff acknowledged her prior experiences with divorce and her level of education. The plaintiff conceded that she never explored other alternatives to protect her interest in the real property. When she requested a prenuptial agreement to clarify the rights of the parties to their respective estates, she was rebuffed by the defendant and she elected not to press the matter. Similarly, after her marriage to defendant, she was rebuffed at additional attempts to secure her interests.
On direct examination the defendant gave an account that was not factually different from that of the plaintiff, except that the defendant insisted that the plaintiff made a gift of 50% of the realty in question along with other items in dispute such as the ring, joint checking account, two bikes and two kayaks. During his testimony, he attempted to magnify his nonmonetary contributions to the acquisition and maintenance of the realty. He also indicated that he incurred other expenses in furtherance of the marital partnership.
On cross-examination defendant conceded that during this 11-month marriage his gross estate, exclusive of the disputed property, nearly doubled to about $200,000, despite earnings from his business of less than $15,000. He attributes this growth to the increase in value of his stock portfolio. He also acknowledged that he had no canceled checks or receipts to verify the expenses he allegedly incurred for work done on the disputed property. The defendant stated that, although he was a veteran and entitled to a veteran’s exemption, he had not made an application for such tax relief. Most significantly, the defendant admitted that his name was not on the contract of sale and that he made no contribution towards the down payment, the purchase price or any attendant closing costs including prospective realty taxes.
*440 In addition to the real property, the defendant seeks the return of his alleged contribution to the enhancement of the plaintiffs engagement ring as well as the return of his kayak and bicycle. The defendant also claims to be entitled to restitution for his efforts towards the improvement of the real property, which consists of painting and other enhancements to the premises.
There are several, alternative legal theories to consider in determining the interests of the parties to the real property which is the principal asset in dispute. Regardless of the legal theory employed, the court arrives at the same conclusion. The first consideration must be to determine whether the property in question is marital or separate property. Since the property was acquired before the marriage of the parties, a traditional analysis leads to the seemingly facile conclusion that the real property is the separate property of each of the litigants. (Domestic Relations Law § 236 [B] [1] [d].) However tempting such an approach might seem, it is misplaced in the context of the unique facts presented herein. In the present case, it is undisputed that the entire cost attendant to the acquisition of such realty was borne by the plaintiff during the courtship of the parties which culminated in their marriage. The mere fact that the title instruments were executed prior to the marriage should not automatically preclude categorizing the property as marital.
This very issue has perplexed the commentators for some time. As specifically noted in the Practice Commentary to the Domestic Relations Law:
“Property acquired before marriage is not a product of the marital partnership and does not constitute marital property. However, wedding gifts are held to be marital or joint property, despite the source, unless the gift was something that could be used only by one spouse or was specifically earmarked as exclusively intended for one spouse [citations omitted]. Thus, it may be that at least certain types of property, acquired before the marriage but in contemplation thereof, may be ‘marital’ and not separate property.
“An important, and as yet unresolved, question is whether property given by one spouse to another, prior to and in contemplation of marriage, is marital or separate property * * *
“However, property given in an engagement period, other than the engagement ring itself, may, under the circumstances of a given case, be conditional gifts. Even in the absence *441 of proof that a condition — the performance of the marriage— was expressly imposed by the donor, the courts presume that all antenuptial gifts are subject to return if the marriage is not performed [citations omitted]. Hence, even in the non-engagement ring context, it may be argued that full title to the gifted property did not vest until marriage, and, hence, the property is marital” (Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestice Relations Law C236B:8, at 209-210 [emphasis added]).
The unique facts of this case lead the court to the conclusion that, although the defendant’s interest in the realty was created before the marriage which is the subject of this divorce proceeding, the property must be categorized as marital. The weight of the credible evidence is clear beyond peradventure that, were it not for the fact that the parties would soon be married, plaintiff would not have made the gift in question. In essence, the gift was conditioned on the parties’ marriage. The grant was also in furtherance of the plaintiff’s misguided attempt to satisfy what she perceived to be the defendant’s desire to immunize his shelter from any possible claim by her heirs in the event of her prior death. If the actions of the plaintiff are construed as a gift, under these circumstances the plaintiff should be entitled to the recoupment of the entire value of said gift. (See, Coppola v Coppola, 18 AD2d 1004 [2d Dept 1963].)
The court has examined numerous cases cited by respective counsel and notes that none are exactly on point. The common thread, if any, which can be discerned is that the courts go to great lengths to arrive at an equitable result regardless of the legal theory employed to arrive at that result. For example, in a case far more difficult to place within the parameters of equitable distribution, the Appellate Division, Second Department, has distributed property acquired prior to the marriage and titled in one spouse to the exclusion of the other in an equal fashion, in essence presuming that after 20 years of marriage the other spouse’s contribution to the marriage and the increase of the value of the premises in essence negates its separate identity (cf., Ryan v Ryan, 123 AD2d 679 [2d Dept 1986]). Such narrow holdings ignore the very predicate for the adoption of the Domestic Relations Law, to wit, that society has a moral imperative and a right to protect the institution of marriage and the economic relations attendant thereto. (Dulber v Dulber, 63 Misc 2d 259 [Sup Ct, Queens County 1970], mod on other grounds 37 AD2d 566, affd 29 NY2d 408 [1972].)
Most of the equitable distribution provisions of the Domestic Relations Law endeavor to regulate the economic consequences *442 flowing from the dissolution of that relationship, but the moral and societal context in which that law is presented cannot be ignored. The underlying rationale of the reforms of 1980 was the assumption that marriage was purely an economic partnership and should be treated as such. Yet the statute, if read narrowly, would exclude all contributions made in furtherance of that economic union if such contribution preceded the marriage in question. Such an approach provides a bright line, distinguishing marital from separate property, but ignores what often transpires in relationships that ultimately result in marriage, to wit, that the economic partnership frequently is up and running prior to the marriage. Where no marriage results, dissolution of such a partnership is effected through resort to equitable and legal principles not statutorily established. However where, as here, the partnership and the contributions to it would not exist but for the impending consummation of the intended marriage contract, then the provisions of the Domestic Relations Law should control even as to property acquired prior to the marriage. To hold otherwise would permit the Equitable Distribution Law to be utilized as a sword rather than the shield for which it was intended and would encourage the unscrupulous to prey upon weak-minded or emotionally fragile people to part with their property in return for a potemkin (i.e., phoney) marriage.
In order to conclude, as this court does today, that property transferred or acquired before marriage between individuals who subsequently marry can be characterized as marital property, certain rigorous criteria must be established lest the statutory restrictions be judicially nullified. First, the transfer of the property must be induced or motivated by the contemplated marriage. Second, the transfer must be consistent with, and in furtherance of, the contemplated economic and spiritual union. By way of example, a gift to one of the parties titled solely in that person’s name would not be afforded status as marital property, in contrast to gifts given to both parties or held as joint owners (for example, wedding gifts of cash deposited in a joint account). Third, there must be a marriage in furtherance of the transfer.* Fourth, the failure to characterize the property as marital would lead to the unjust enrichment of one of the parties. Fifth, the potential unjust enrichment must be of such a magnitude or dimension as to shock the conscience of society and the court.
*443 Applying such an analysis to the facts at hand leads this court to conclude that the real property must be deemed marital. Here the transfer of the property was induced primarily by the plaintiffs affection for the defendant and her bona fide belief that the parties would marry. The property was titled in such a manner (joint tenants with right of survivorship) as would bespeak both an economic and spiritual union attendant to marriage. The parties ultimately married. The alternative to deeming the property to be marital would be to unjustly enrich the defendant in a sum in excess of $150,000, a sum far in excess of his separate holdings. Moreover, to hold otherwise would encourage others to prey on broken-hearted or emotionally vulnerable people to obtain an unfair economic advantage through the misuse of the marriage contract. Since the court believes and finds the property to be marital, the court must now equitably distribute such property. The court concludes that the realty must be sold. Once reduced to cash, the plaintiff shall receive a sum equal to the initial purchase price (see, Coffey v Coffey, 119 AD2d 620 [2d Dept 1986]; Butler v Butler, 171 AD2d 89 [2d Dept 1991]). Any sum in excess of the initial purchase price shall be divided equally between the parties.
Similarly, the joint checking account is likewise marital. It shall be awarded exclusively to the plaintiff. In so concluding the court observes that the defendant’s portfolio doubled during this brief marriage. The plaintiff has not sought any claim to that portion of the increase in the defendant’s separate property occurring during this marriage (see, Price v Price, 69 NY2d 8 [1986]). During this same period of time that defendant’s net worth increased by $100,000, the plaintiff’s net worth decreased by $30,000 as a direct result of her largesse bestowed on the defendant. The great bulk of the funds in that account were derived from the plaintiff and the defendant’s contribution to the sum on deposit was de minimis.
Utilizing the same principles, the court must conclude that the plaintiffs gifts to the defendant prior to the marriage of a watch, expensive clothes and an automobile do not meet the criteria set forth above. The character of the title (separate) is inconsistent with an economic partnership. The donative intent was a gift to the individual, not the impending economic partnership. Thus, these items retain their separate identity and are the sole property of the defendant. Similarly, the gift of the engagement ring is surrounded in unusual circumstances which require that the defendant be excluded from any potential interest in this asset. The stone and the setting were *444 derived from the plaintiffs separate property and the enhancement was paid for from funds which, although marital in nature, were primarily derived from the plaintiffs resources. The ring is therefore the sole property of the plaintiff. The bikes and kayaks are marital property and each party shall be entitled to one bike and one kayak.
In making these awards, this court has considered all the factors enumerated in Domestic Relations Law § 236 (B). The parties had each been married before. The parties were married on May 1, 1997 and this action was commenced less than one year later. At the time of their marriage, the plaintiff was 59 and in good health and the defendant was 53 and in good health. Virtually all the property now deemed marital was purchased through the resources of the plaintiff. The defendant’s contributions, both with respect to painting and improving the marital premises and contributions from his meager pay, were de minimis and pale in comparison to the massive contributions of the plaintiff. As a consequence of the plaintiffs generosity the defendant was able to oversee the dramatic increase in his net worth while the plaintiff saw the diminishment of her resources. Both parties are capable of providing for their own support and do not need the support of the other. Neither party provided any evidence of the tax consequences of any possible distribution of the marital estate. The court takes judicial notice that, in the event of the sale of the property, both sides will share on the tax on the transfer stamps of the deed of conveyance. Neither party offered any further proof contemplated by the statute.
Even had the court characterized the defendant’s interest in the property as separate property, the defendant would still be excluded from any interest in the realty in question. In a similar case involving personal property, it has been held that Banking Law § 675 (b) merely creates a presumption as to the ownership whereas here the proof clearly establishes that the contributions to the account were not joint, but are derived solely from one party, the presumption is rebutted and the account must be distributed to the party who made the contribution to the account. (Giuffre v Giuffre, 204 AD2d 684 [2d Dept 1994].) A similar analysis, if applied herein, would rebut the presumption of joint ownership and require an award of sole title to the plaintiff.
The principal asset in dispute is realty, however, and it is subject to the plaintiffs action for partition. Although an action strictly governed by statute, partition is applied pursuant to *445 equitable principles. (Schneidman v Steckler, 11 Misc 2d 176, appeal dismissed 9 AD2d 764 [2d Dept 1959].) The actions of the plaintiff in placing the defendant’s name on the deed to the Shelter Island property gave rise to two presumptions that lie at the heart of the defendant’s case. First, the defendant’s claim that the purchase by the plaintiff of the property in the names of both parties as joint tenants is indicative of the requisite donative intent attendant to a gift. Second, the designation of the parties as joint tenants creates a unity of estates which, upon partition, requires an equal division of the property or the proceeds of any sale. (EPTL 6-2.2.) The difficulty with the defendant’s case is that neither presumption is absolute and may be rebutted (Fisch, New York Evidence §§ 1121, 1142 [2d ed 1977]; Mazzarelli v Mazzarelli, 55 AD2d 946, affd 44 NY2d 801 [1978]; Kover v Kover, 29 NY2d 408 [1972]; Prince, Richardson on Evidence §§ 3-101, 3-102 [Farrell 11th ed]; Martin, Capra and Rossi, New York Evidence Handbook § 3.2.3). Both presumptions must yield to those facts as found by the court. Moreover, the equities do not require an equal division of the property.
The weight of the credible evidence demonstrates that the plaintiff did not intend to make a gift of 50% of any potential interest she was to have in the Shelter Island property. On the contrary, in anticipation of a future marriage plaintiff wished to provide the defendant with a place to live during their marriage and a measure of security should she predecease defendant by immunizing this realty from any claim of her heirs. In essence, the plaintiff only meant to confer a contingent life estate upon the defendant. Moreover, even if the court were to conclude otherwise, upon partition, the fact that the purchase was consummated through the sole use of the plaintiffs resources' negates any right of the defendant to obtain any recoupment beyond the value of his own contributions. (See, Vincent v Vincent, 80 AD2d 582 [2d Dept 1981].) In light of the facts as set forth herein, to allow the defendant to recover any portion of the original purchase price would be unconscionable.
Although not necessary to the determination rendered herein, the court observes that the application of two additional legal theories leads to the same result. The court is empowered pursuant to Domestic Relations Law § 234 to determine any issue as to the property of the parties. Additionally, although not at issue here, apart from these divorce proceedings the plaintiff could have asserted a claim for the imposition of a constructive trust. Under either theory the facts were such that the plaintiff *446 may have prevailed on those theories. Notwithstanding those circumstances, the inclusion of the Shelter Island property in the marital estate and the proper application of the Equitable Distribution Law provides a more efficacious means of presenting the issue for judicial determination.

 The court notes, that had the contemplated marriage not taken place, the plaintiff would be able to effect the return of the realty (see, Civil Rights Law § 80-b; Gaden v Gaden, 29 NY2d 80).