[893 NYS2d 733]

Susan E. Stewart, Plaintiff, v John S. Stewart, Defendant.

Supreme Court, Delaware County, December 5, 2009

**APPEARANCES OF COUNSEL**

*Frederick J. Neroni*, Delhi, for plaintiff. *Donald J. Schwartz*, Oneonta, for defendant.

**OPINION OF THE COURT**

Eugene E. Peckham, J.

This case presents what has lately become a common occurrence; a man and woman live together, sometimes for years, and then get married. The parties in this case began living together in 1986 and married in 2004. Both the parties' pleadings are for divorce on the grounds of cruel and inhuman treatment and equitable distribution. Neither fraud, partnership, nor constructive trust have been pleaded.

Here, both parties testified they met in California in 1986 when he was 17 and she was 39. Plaintiff's first husband, a firefighter, had died, leaving her sole owner of a house in Bayside, Queens. She paid for a ticket for defendant to come to Queens and they began living together. The house in Queens was sold in 1998 and the proceeds were used by plaintiff to pay $95,000 cash for a house in Bloomville, New York. The house has now been appraised for $210,000 as of May 2007 when this action was commenced (defendant's exhibit A).

At closing in December 1998 the deed to the Bloomville house was placed in joint names (defendant's exhibit C). Subsequently, in October 1999, defendant quitclaimed his interest in the house to plaintiff (plaintiff's exhibit 1). Plaintiff testified the attorney for the closing made a mistake putting the house in both names and this was corrected by the quitclaim. Defendant testified he signed the quitclaim under duress and in the interest of harmony, because the joint names on the house became a major argument between them.

The parties were married August 7, 2004.

Defendant is a plumber. After the Bloomville house was purchased and prior to the marriage, defendant did substantial work on the house. He testified that, together with a carpenter friend, he remodeled the kitchen and bathroom. The carpenter was not paid, as defendant worked on jobs for the carpenter without charge, a barter exchange. Defendant also installed a new furnace and heating system for the house. Besides the furnace, this involved installing all new pipes to convert the heat from electric to propane gas and radiators.

Defendant also testified he repaired the chimney, took down barn wood and installed sheetrock in the living room, put a new floor and appliances in the laundry room and put in a driveway and culvert and paid $4,000 toward a new septic system. He was also responsible for mowing and outside maintenance and major repairs inside the house.

Plaintiff disputed the amount of work done by defendant, saying he only put a sink in the kitchen and a shower and toilet

in the bathroom. She did admit he paid $4,000 toward the septic and installed the furnace and heating system, but claimed she paid $7,000 for it. She also claimed that after the kitchen and bathroom remodelings, she paid for trips to Las Vegas and London and Amsterdam and that these trips were compensation for the work done. On cross-examination, however, she admitted these were vacations they took together and she enjoyed them.

Plaintiff's position is that the house is her separate property and defendant should receive no share of it. Plaintiff was trying to downgrade defendant's work and contribution to enhance her position and therefore her testimony is less credible. Defendant, as a plumber actually doing the work, is more likely to remember the work he did and thus his testimony is believable. The work done by defendant obviously enhanced the value of the house.

Both parties testified the reason they did not get married sooner was that plaintiff was collecting Social Security as a result of the death of her first husband and did not want to lose that income. Both parties also testified that throughout their relationship they shared expenses in paying bills although they disagreed as to how much each contributed. Plaintiff claimed defendant gave her $600 per month. Defendant claimed he was paid in cash and that he "brought the money, put it on the table and said pay the bills."

A party who contributes separate property toward purchase of the marital residence is entitled to a return of the total contribution. (*Milnarik v Milnarik*, 23 AD3d 960 [3d Dept 2005]; *Zanger v Zanger*, 1 AD3d 865 [3d Dept 2003].) The burden of proof is upon the person claiming such separate property credit. (*Walasek v Walasek*, 243 AD2d 851 [3d Dept 1997].) But once the separate property is commingléd in joint names, it becomes marital property. (*Homkey-Hawkins v Hawkins*, 42 AD3d 725 [3d Dept 2007]; *Fessenden v Fessenden*, 307 AD2d 444 [3d Dept 2003].)

> *"Under the equitable distribution statute, separate property is defined to include an increase in value of separate property, except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse (Domestic Relations Law § 236 [B] [1] [d] [3]). Thus, any appreciation in the value of separate property due to the contributions or efforts of the nontitled spouse will be considered mar-*

*ital property (Price v Price, 69 NY2d 8 [1986]). This includes any direct contributions to the appreciation, such as when the nontitled spouse makes financial contributions towards the property, as well as when the nontitled spouse makes direct nonfinancial contributions, such as by personally maintaining, making improvements to, or renovating a marital residence." (Johnson v Chapin,* 12 NY3d 461, 466 [2009] [emphasis added].)

The problem here is that most of the work performed by defendant and also the appreciation in the value of the house occurred prior to the parties' marriage, but during their period of cohabitation. The Court of Appeals has held that implied contracts between unmarried cohabitants are not enforceable and will not be implied from the conduct of the parties. However, express contracts may be enforced. (*Morone v Morone,* 50 NY2d 481 [1980].) Neither party testified to any contract between them, express or implied, although both testified they shared expenses.

The *Morone* decision was in a different era. The number of persons living together before marriage may or may not have changed, but they do so more openly now. A number of cases have held that when the house is purchased shortly before marriage in the name of only one party, the appreciation will still be considered marital property if the nontitled spouse contributes to the appreciation. (*Nell v Nell,* 166 AD2d 154 [1st Dept 1990]; *Ryan v Ryan,* 123 AD2d 679 [2d Dept 1986]; *Wade v Porreca,* 99 AD2d 888 [3d Dept 1984]; *Koehler v Koehler,* 182 Misc 2d 436 [Sup Ct, Suffolk County 1999].)

In this case, the house was purchased not shortly before the marriage, but 5½ years before marriage. Nonetheless, there is no reason why the same principle should not apply. The parties lived together a long time, 18 years, apparently intending to marry and eventually did marry. Both testified the main reason they did not marry sooner was so that plaintiff could continue to collect Social Security from her deceased first husband. Defendant's testimony supports the fact that his work on maintenance and improvements to the house contributed substantially to the increase in value.

It has also been held that a cause of action for unjust enrichment applies between cohabitants. (*Williams v Lynch,* 245 AD2d 715 [3d Dept 1997]; *Matter of Figueroa,* NYLJ, Feb. 20, 2003, at 21 [Sur Ct, NY County].) Unjust enrichment can be enforced by

the court in the exercise of its equitable powers. (*Waldman v Englishtown Sportswear*, 92 AD2d 833 [1st Dept 1983]; *cf. Soderholm v Kosty*, 177 Misc 2d 403 [1998].) Unjust enrichment is an allegation that plaintiff "conferred a benefit upon defendants and that 'defendants will obtain such benefit without adequately compensating plaintiff.' " (*Lake Erie Distribs. v Martlet Importing Co.*, 221 AD2d 954, 956 [4th Dept 1995].)

Here, it was defendant who conferred the benefit on plaintiff by the work he performed to remodel and improve the house. Similarly, in *Williams v Lynch* (245 AD3d at 716), the cohabiting female plaintiff alleged she increased the value of defendant's house by the work she performed for "renovation of the garage, a new furnace and substantial landscaping work." It is held that plaintiff in this case will be unjustly enriched and that it would be inequitable if plaintiff receives all the benefit of the appreciation in value of the house, and defendant none.

Both parties agree plaintiff should receive the house in equitable distribution. It is not encumbered by a mortgage. Plaintiff should receive credit for her $95,000 separate property contribution to the purchase. If the house were sold, a broker's commission of 6% or $12,600 would have to be paid. Thus, appreciation of the house is $102,400 ($210,000 - $95,000 - $12,600).

It is also well established that equitable distribution does not mean equal distribution. (*Matter of Ward v Ward*, 94 AD2d 908 [3d Dept 1983].) Taking all this into consideration, plaintiff shall pay to defendant one third of the appreciation, or $34,133.33—such sum to be paid within 90 days from the date hereof.

The parties also dispute the ownership of a list of tools, heirlooms and personal property claimed by defendant (defendant's exhibit F). Plaintiff claims she paid for the tools and that she put most of the property in a pickup truck to deliver to him. Defendant claims she only paid for 10% to 15% of the tools and that the items delivered to him were mostly clothes. The items remaining at the house listed on defendant's exhibit F shall be delivered to defendant. The attorneys for the parties shall arrange for a law enforcement officer to accompany defendant to pick up the items at a mutually agreeable time.

Each party shall retain his or her own vehicle. Plaintiff has a small retirement account she testified is now worth about $7,000. She shall retain this asset. Defendant shall receive the 1952 Ford Customline vehicle. Each party shall pay the credit card debt in his or her respective name. Each party shall pay his or her own attorney's fees.

The parties have stipulated that plaintiff shall receive a divorce on the grounds of constructive abandonment. Both parties are self-supporting and neither has requested maintenance so there is no award of maintenance.

Plaintiff to submit findings and judgment in accord with this decision.